## Cooke-Jellico Coal Company v. Richardson's Administratrix.

(Decided December 19, 1913).

### Appeal from Whitley Circuit Court.

1. Master and Servant—Injury to Employee—Proof of Negligence—Evidence.—In an action for damages against a coal mining company for the death of an employee, it is not sufficient merely to prove negligence and injury, but it is necessary to show that the proven injury was the natural and proximate result of the proven negligence.

2. Master and Servant—Mines and Mining—Injury to Employee—Negligence—Evidence.—In an action for damages against a coal company for the death of an employee, based on (1) the negligent planning, surveying and excavation of the mine, (2) failure to inspect, (3) failure to cross-timber, and (4) the removal of a prop set by decedent, evidence examined and held insufficient to take the case to the jury on the negligent planning, surveying and excavation of the mine and the removal of the prop, but sufficient to take the case to the jury on the question of failure to inspect and cross-timber the mine.

TYE & SILER for appellant.

H. C. GILLIS, B. B. SNYDER and J. B. SNYDER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Ed Richardson, a coal miner, in the employ of the Cooke-Jellico Coal Company, was struck by a falling

rock and killed. In this action for damages against the coal company his administratrix recovered a verdict and judgment for $2,500. The coal company appeals.

Plaintiff based her cause of action on the failure of the defendant to use ordinary care to furnish decedent a reasonably safe place in which to work. In this connection she relied on four specific acts of negligence: (1) The negligent planning, surveying and excavation of the mine; (2) failure to inspect; (3) failure to cross-timber; (4) the removal of a prop set by decedent.

Richardson was a miner of several years' experience. He had not only worked in defendant's mine for a number of years, but had acted as foreman for another mine for about ten months. At the time of the accident he was working in a room neck which had been driven about 20 feet, 4 inches from the entry. The room neck was 10 feet, 4 inches wide at the entry and 8 feet, 5 inches at the face of the coal. Ahead of him was a solid block of coal about 300 feet in length. On the right of the room neck was a block of coal from 26 to 30 feet wide. According to the evidence for plaintiff, the block of coal on the left of the room neck had been "gobbed out" on the far side, and had been filled in with rocks and debris. At the beginning of the entry this block was only 12 feet wide. It appears, however, that this block gradually widened as it extended back, and at a point opposite the end of the room neck was about 72 feet wide. The entries were indicated on the map. The room necks and rooms were not located on the map, but their location was left to be determined by the mine foreman to the best advantage. In locating the room necks the mine foreman made no measurements. Plaintiff further proved by two witnesses that a stump 12 feet wide was not sufficient for safety, as it would not afford proper support for the roof. Prior to the accident Richardson had fired three shots in the coal. He had loaded and removed the coal shot down from under the rock. The rock that struck decedent was 7 feet, 4 inches long, and 7 feet, 2 inches wide. It reached almost from one rib to the other, and extended right up to within a short distance from the face of the coal. Near the face of the coal the rock was thin, tapering down to a feather edge. When it reached a point about 4 feet from the face it was a foot thick. It then tapered down to another feather edge to a point where it reached a small hill seam.

On the Saturday preceding the Tuesday on which Richardson was killed Charles Cox, a track layer, removed from the room neck a small prop. This prop was about 6 feet from the entry and about 8 feet from the edge of the rock that fell. He knocked the prop out with a small hammer. It had been about three days since the mine foreman was in the room neck. When he was there he did not see the prop removed by Cox. Two of plaintiff's witnesses testified that the removal of this prop might have caused the rock to fall, while another of plaintiff's witnesses testified that it would not have had any effect on the other place. There was also testimony to the effect that it is the duty of the miner to set timbers when he widens a room, and also the duty of the miner to set props, while in the case of a neck before it is widened it is the duty of the company. It is the duty of the mine foreman to watch for these places and see that they are timbered.

According to the evidence for the defendant, the accident happened in the room neck at a place 20 or 25 feet from where the pillar on the left had been gobbed out. The pillar on the left was entirely sufficient to support the roof of the mine, and furthermore the fact that the pillar on the left had been gobbed out, even if insufficient to support the roof at that point, had no effect whatever on the roof at the place where Richardson was killed. Defendant also proved by a number of witnesses that the removal of the prop 8 feet from the rock could in no way have affected the roof at the place where the rock fell. It was further shown that it was the decedent's duty, after removing the coal from under the rock, to sound the roof for the purpose of ascertaining whether it was drummy or solid. While it was the foreman's duty to have the room necks cross-timbered if he knew of their condition, it was also the duty of the miner to apprise him of this fact, and the latter, who was digging the coal and removing the support from the roof had a better opportunity to know of its condition than the mine foreman who had the whole mine to look after. Several witnesses for the defendant also testified that the accident was not due to a sag or squeeze in the mine at that time, nor had there been any sag or squeeze since that time.

The court told the jury in substance, (1) that it was the duty of the defendant to use ordinary care to provide and furnish plaintiff's decedent a reasonably safe place

in which to work; (2) it was the duty of the defendant to inspect or cause to be inspected by its mine foreman, superintendent or other competent person, its entries and working places, including that in which plaintiff's decedent was killed, and to use ordinary care to keep and maintain such place in such condition as to be free from loose, overhanging slate or rock; (3) it was the duty of the defendant company to support with cross-beams any and all loose or overhanging slate, if any, which could not be taken down or removed in the room neck in which plaintiff's decedent was assigned to work, and which loose, overhanging slate was known to the defendant company, its officers or agents, or by the exercise of ordinary care could have been known to it or them: (4) it was the duty of the defendant company to so plan, lay out and drive its entries, rooms, room necks and other openings and passageways as to leave at regular intervals sufficient pillars of coal in their natural bed to support the roof of the mine and to render same reasonably safe; and if they believed from the evidence that decedent, while engaged in driving the room neck mentioned in the evidence, and while exercising ordinary care for his own safety, was killed by rock or slate falling from the roof of the room neck, which fall of rock or slate was the direct and proximate result of the carelessness or negligence of the company in failing to perform any one of the aforementioned duties, and that the dangerous and unsafe condition of the room neck, if it was dangerous or unsafe, was known to the defendant, its officers or agents, or by the exercise of ordinary care could have been known to them, and was unknown to the decedent, and could not have been known to him by the exercise of ordinary care, then the law was for the plaintiff, and the jury should so find. After giving the converse of this instruction and the measure of damages, and defining ordinary care and negligence, the court also gave the usual instruction on contributory negligence.

We have repeatedly held that in an action such as this it is not sufficient for the plaintiff merely to prove negligence and injury, but that it is necessary to show that the proven injury was the natural and proximate result of the proven negligence. C., N. O. & T. P. Ry. Co. v. Zachary's Admr., 32 Ky. L. R., 680; Stewart's Admr. v. N. C. & St. L. Ry. Co., 146 Ky., 131. Under this rule the evidence on the question of the removal of

the prop and on the further question of the insufficiency of the pillars to support the roof of the mine did not authorize the submission of the case to the jury.

On the question of the removal of the prop the evidence is to the effect that the prop was small, and was so insecurely fastened that it could be knocked out with a small hammer. Furthermore, the prop was seven or eight feet from the edge of the rock that fell, and between the prop and the rock was a small hill seam. The prop was removed on Saturday. The accident took place on Tuesday. No witness stated that the removal of this prop caused the roof to fall. One witness stated that "it might have"; another witness said, "it could have." It was incumbent upon plaintiff to show that the fall of the roof was the natural and probable result of the removal of the prop. Mere conjecture is not proof; especially when the undisputed facts show the contrary. There was no evidence of a sag or squeeze. A large rock fell from the roof. The break stopped at the hill seam between the prop and the rock, and the prop was seven or eight feet from the rock. Under these circumstances, the removal of the prop could not have caused the rock to fall.

On the question of the insufficiency of the pillars, the evidence is as follows: In front of the room neck was a solid block of coal about 300 feet in width. On the right hand side was a pillar of the approved size. On the left hand side the pillar was only 12 feet at the entry but gradually widened to about 72 feet at a point opposite the end of the room neck. On the far side of this pillar there was a gobbed out place. There was not only no evidence showing a squeeze or sag in the mountain at the time of the injury, but there was no evidence of a sag or a squeeze even at the time of the trial. Had the pillar on the left hand side been insufficient it would have been crushed had the mountain taken weight. No such condition is shown. While there was testimony tending to show a pillar 12 feet wide was insufficient to support the roof, there was no evidence tending to show that the insufficiency of the pillar at this point had caused the roof of the entry, some 20 or 25 feet away, to fall. That being true, the question of the insufficiency of the pillar should not have been submitted to the jury.

As to the duty of inspection and cross-timbering a different question is presented. The facts of this case

differ from those in Smith's Admr. v. North Jellico Coal Co., 131 Ky., 197. In that case there was a "rotten top." Smith was engaged in cutting coal with a machine. It was his duty to call for props. Immediately after cutting out a block of coal the roof fell. There was no proof conducing to show that it was the duty of the foreman of the mine to inspect the place where Smith was at work in order to see whether or not it was in a reasonably safe condition. Nor was there any proof that after the block of coal was cut out the foreman, in the exercise of ordinary care, could have ascertained that cross-timbering was practicable and necessary. In the present case it is affirmatively shown that it was not only the duty of the defendant to cross-timber the neck where plaintiff was at work, after being informed that cross-timbering was necessary, but to inspect the room neck for the purpose of ascertaining whether or not cross-timbering was practicable and necessary, and if practicable and necessary, to have the cross-timbering done. It was also made to appear that the foreman had not been in the room neck for two or three days, and there are certain physical facts from which it could be reasonably inferred that some time had elapsed between the removal of the coal and the falling of the rock; and that ordinary care in inspecting the room neck would have disclosed conditions showing the necessity for cross-timbering in order to render the place where decedent was at work reasonably safe. Under these circumstances the question was for the jury.

On another trial the court will instruct the jury as follows:

(1) It was the duty of the defendant's foreman to use ordinary care to cross-timber the neck where decedent was at work, and if you believe from the evidence that after the decedent removed the coal from the place where he was at work the condition of the neck was such as to render it practicable and necessary to cross-timber the place in order to make it reasonably safe for plaintiff to work there, and this condition, if it did exist, could have been known to the foreman by the exercise of ordinary care on his part in inspecting the place where decedent was at work, and he failed to exercise such care, and by reason of such failure, if any, the decedent, while exercising ordinary care for his own safety, was injured and killed, you will find for the

plaintiff. Unless you so believe, you will find for the defendant.

(2) If the decedent, by the work he did, made the place dangerous, and he knew the danger, or by ordinary care in the discharge of his duties should have known it, and with this knowledge he continued at work, he took the risk, and you should find for the defendant.

In addition to the foregoing instruction the court will give other instructions defining ordinary care and fixing the measure of damages.

Judgment reversed and cause remanded for new trial consistent with this opinion.