## Louisville Pillow Company v. Kentucky Heating Company, et al.

(Decided February 3, 1914.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. Negligence—Will Not Be Presumed—Burden on Plaintiff to Show.—Negligence will not be presumed and the plaintiff must

introduce some evidence conducing to show negligence on the part of the defendant and that connects this negligence with the injury complained of, and when the plaintiff does not offer any direct or circumstantial evidence showing negligence connecting with the injury, but rests his case on speculative theories, and the evidence for the defendant tends to show that the injury resulted from causes not connected with his negligence, the court should take the case from the jury.

2. Negligence—Proof of by Circumstantial Evidence.—Circumstantial evidence is equally as sufficient as direct evidence when it conduces to show negligence, and when it connects this negligence with the injury.

DUFFIN, SAPINSKY & DUFFIN for appellant.

O'DOHERTY & YONTS for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellant brought this suit to recover damages for the alleged negligence of an employe of the appellee company in setting fire to some jute waste in the basement of its establishment. After the evidence for both parties had been introduced, the trial judge directed a verdict in favor of the appellee, and the only question on this appeal is, should the case have gone to the jury?

The evidence on the one material issue in the case is about as conflicting and irreconcilable as it could well be. Indeed the only matter concerning which the parties are agreed is that the jute waste in the appellant company's place of business caught fire on the same day that Manning, a meter inspector for the appellant company, was at appellee's place of business for the purpose of inspecting the meter that was in the basement where the jute was piled.

R. P. Brewer, the principal witness for the appellant, said that he was one of its employes, and that he was sitting in the building when he saw appellee, whom he knew very well, come in; that when he started down into the basement he ran his hand in his vest pocket to get a candle; "I didn't see him light it; saw him run his hand in as he usually done;" that he saw the candle and saw Manning go down in the basement where the meter was located; that before going down he did not turn the key that lighted the electric lights in the basement, although he knew that the basement lights could be turned on by turning the key or button; that he told him to always turn on the lights before he went into the basement, that

the jute was sure to catch fire from a candle, but that he did not turn the lights on; that the jute was in the part of the basement where the meter was located but was so piled and arranged as that Manning could easily have gone to the meter; that Manning was in the basement long enough to read the meter, about two minutes, when he came out and asked for a drink of water, and before Manning had hardly time to leave the building the alarm was given that there was fire in the basement.

Asked "Did you see him when he came up?" he answered, "Yes, sir; when he came up and blew out the candle.  Q. Where did he blow out his candle?  A. At the top of the steps.  Q. How long from the time when he came up and blew out his candle until you knew there was a fire in that inner cellar?  A. A minute and a half or two minutes.  Q.  I understood you say that you saw this young man as he started down there lighting a candle?  A. I did not see him light it.  I seen him run his hand in his vest pocket.  Q. Saw the candle?  A. Yes, sir.  Q. What kind of a candle?  A. Large candle.  Q. Was it an electric candle?  A. No, sir.  Q. Tallow candle?  A. Yes, sir.  Q. Now, as a matter of fact, don't you know that that was not a candle, but what they call an electric candle, that he had?  A. No, sir; I seen it when he came out.  S. You saw him come out and blow it out?  A. Blew it.  Q. Don't you know he touched the button?  A. No, sir; I can tell a blaze.  Q. Was it a torch or candle?  A. Large size blaze and large size candle."

Another witness, Guy Kelly, testified that he saw Manning distinctly when he came out of the door and saw him blow the light out that he had.  Other witnesses testified that jute is a very inflammable substance, especially when it is greasy, as this jute was, and that it would take fire from a lighted candle, although the blaze might not actually come in contact with the jute.

On the other hand, Manning testified that he had no candle of any kind but that he did have an electric bulb light having something of the appearance of a large candle, and that it was this electric light that he took out of his pocket as he went down in the basement and that he put it out by turning the buttom on it as he came out of the basement; that he did not read the meter or go in several feet of it, because he could not get to it on account of the jute piled up around it.  He further said

that the fire did not break out until at least half an hour after he left the building.

Other officers and employes of the appellee company testified that meter readers carried electric bulbs and not candles or torches, and that Manning was furnished with an electric light on the day in question.

It is contended for appellee that the evidence for the appellant, assuming it to be true, was not sufficient to convict appellee of negligence, as it did not show any connection between the lighted candle and the fire or that Manning was in that part of the basement where the jute was located.

We have read all of the evidence very carefully and our conclusion is that the case should have gone to the jury, although it should be conceded that the weight of the evidence tends to show that Manning had an electric light and not a candle in his hands when he went into the basement. Of course if he had an electric light and not a candle, the fire must have occurred from some cause not connected with Manning, as the only theory upon which the appellee can be held liable is that Manning went into the basement with a lighted candle in his hand. But however this may be, the positive evidence of Brewer that Manning did have a lighted candle in his hand when he came out of the basement and that the fire was discovered immediately, and that the jute would catch fire from a lighted candle, although it might not come in contact with it, made out for the appellant a case authorizing it to have the jury dispose of the disputed issues of fact.

In announcing this conclusion we have not overlooked the cases of Hughes v. Cincinnati Railroad, 91 Ky., 526; Wintuska v. L. & N. R. R., 14 Ky. L. R., 579; Wood v. Cumberland Telephone Co., 151 Ky., 77; L. & N. R. R. Co. v. Long, 139 Ky., 299; Hollon v. Campton Fuel & Light Co., 127 Ky., 266; Louisville Gas Co. v. Kaufman Straus Co., 105 Ky., 131, and others of like character relied on by counsel for appellee. It was said in effect in these cases that negligence will not be presumed, and that the plaintiff must introduce some evidence conducing to show negligence on the part of the defendant and that connects this negligence with the injury complained of.

It was further said in effect in these cases that when the plaintiff did not offer any direct or circumstantial

evidence showing negligence connecting with the injury, but rested his case on speculative theories having some tendency to show that the injury complained of was due to the negligence asserted in these theories, and the evidence for the defendant tended to show that the injury resulted from causes not connected with his negligence, the court should take the case from the jury. But here the plaintiff only relied on one theory as to how the fire occurred, and this theory is supported by circumstantial evidence of quite a convincing character, and circumstantial evidence is equally as sufficient as direct evidence when it conduces to show the negligence and to connect this negligence with the **injury.**

Whether Manning had a lighted candle in his hand or an electric torch, and whether he went to the place where the meter was or sufficiently close to the jute to cause it to ignite, were the material questions at issue. The witnesses for the plaintiff said he did have a lighted candle in his hand and that he did go down in the cellar where the jute was and that the fire was discovered about two minutes after he left the cellar and at a point near the meter. Assuming this evidence to be true, the plaintiff made out a case of direct circumstantial evidence showing negligence on the part of the defendent and connecting this negligence with the fire. The plaintiff also introduced other evidence rebutting theories advanced by the defendant that the fire might have happened from some other cause.

The defendant, it is true, advanced several theories conducing to show that the fire happened from other causes than the acts of Manning, and each of these theories was supported by some evidence. But the plaintiff who makes out his case is not to be denied the right to have it submitted to a jury merely because the defendant presents facts and circumstances tending to show that the accident or injury complained of happened in some other way than the one asserted by the plaintiff.

We think the court erred in directing a verdict, and the judgment is, therefore, reversed, with directions for **a new trial.**