## Sutton's Administrator v. Louisville & Nashville Railroad Company.

### (Decided January 25, 1916.)

### Appeal from Nelson Circuit Court.

1. Master and Servant—Death—Negligence—Proximate Cause.—In an action for damages for death, it is not sufficient merely to show that the decedent was guilty of negligence. It must further appear that his death was caused by the proven negligence.
2. Master and Servant—Personal Injuries—Evidence—Sufficiency.— Where, in an action for damages, the injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject it to liability, no recovery can be had.
3. Master and Servant—Personal Injuries—Death—Federal Employers' Liability Act—Evidence—Sufficiency.—In an action against a railroad company by the administrator of a deceased employe to recover damages for his death under the Federal Employers' Liability Act, evidence examined and held insufficient to take the case to the jury.

N. W. HALSTEAD, JAMES GARNETT and M. M. LOGAN for appellant.

JOHN S. KELLEY, JOHN A. FULTON and BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY COMMISSIONER—Affirming.

This is a suit under the Federal Employers' Liability Act by the administrator of Richard R. Sutton against the Louisville & Nashville Railroad Company to recover damages for his death, which is alleged to have been caused by the negligence of the defendant. At the conclusion of plaintiff's evidence the trial court gave a peremptory instruction in favor of the defendant. Plaintiff appeals.

The facts are these: The company was engaged in reconstructing a bridge over Beech Fork Creek in Nelson county. This bridge is a part of the company's road running from its main line at Lebanon Junction, Kentucky, to Knoxville, Tennessee. At the time of the accident a concrete abutment on the north side of the creek was in the process of construction. Beneath the railroad track was an excavation 38 by 32 feet, the bottom of the excavation being 40 feet below the track. A few feet west of the track at the north end of the bridge there was an engine, which was used for the purpose of operating a pump located at the bottom of the excavation and about 70 feet south of the engine. Just above the pump and between the railroad tracks, or on the outside of one of the rails, was located a valve, which was sometimes used for the purpose of operating the pump. A pipe extended from the boiler of the engine to the valve and from the valve to the pump. The railroad track beside the engine was on the ground, but as it extended south it passed the excavation, and when it reached the point where the pump was located it was about 40 feet from the excavation. The valve was placed in or near the track for the purpose of operating the pump from that point. It was not necessary to go to that point to operate the pump; it could be operated from the boiler of the engine. However, it was customary for the employes to go to the valve and use it for that purpose. Unless the pump was used the excavation would fill with water, and it was necessary to operate the pump during the night so that there would be no water in the excavation when the men returned to work in the morning. It was Sutton's duty to operate the engine and pump. He went to work at six o'clock in the evening and remained at work until seven o'clock the next morning. To keep the water out of the excavation it was not necessary to operate the pump all of the time, but only about one-third of the time. In addition to the above duties, Sutton was required to examine the bridge after the train had passed, and if he found anything wrong to report to the foreman. If he saw any trains passing without headlights on the engine he was to flag them down and have the headlights lighted. Sutton was last seen between eleven and twelve o'clock on the night of June 14th, 1912. At that time he was engaged in shoveling coal into the fire box beneath the boiler of the engine. H. C. Burdette, who gave this tes-

timony, and who slept in some cars a few hundred yards away, says that he went to bed about one o'clock. After he had gone to bed, and some time after one o'clock, he heard a train pass going south. He saw Sutton's body the next morning about four o'clock after it had been discovered by the crew of the freight train going north. Burdette examined the bridge and found blood, flesh and clothing extending from the valve south to the point where Sutton's body was picked up. Burdette also says that he heard a train going south about one-thirty, but heard no signal given as it passed the bridge. J. H. Kirkland, the engineer on Train 81, which passed south over the bridge about one o'clock, says that he never saw Sutton or knew that he had been killed until after the fact of his death had been reported to him. Thereupon he made a report saying that his train killed Sutton. Kirkland could not remember whether he had his eyes on the track as he passed over the bridge or not. He saw nobody on the track. He also says that, in his opinion, it was the engineer's duty to look out in approaching the bridge. As he approached the bridge he gave the flag signal about three-quarters of a mile north of the bridge. Later on he gave the road crossing signal about one-half mile north of the bridge. After that he gave no signal. T. R. Coffee, the engineer of Train 56, which passed over the bridge about 4:10 A. M., saw Sutton's body in the center of the bridge only about 30 feet away. About two-thirds of the engine passed over the body. He then picked up and took Sutton's remains to the north side of the river and laid them on a truck. He saw evidences of flesh and blood from the north end of the bridge to the center of the bridge, when he found him. He also found Sutton's hat on the north end of the bridge. The flesh and blood extended along the track for a distance of from 60 to 75 feet. There was quite a pool of blood under the place where the body was found. He also stated that it was the duty of a locomotive engineer in approaching the bridge to keep a lookout and see that there was nothing on the track. There was a bulletin requiring small engines to proceed over the bridge at the rate of 15 miles an hour and large engines at the rate of 4 miles an hour. Henry Shain, who performed the same work in the day time that Sutton performed at night, testified that they used the valve occasionally for operating the pump. About a half mile from each

end of the bridge was placed a yellow flag and at night a yellow lantern to apprise the engineers on trains of the fact that they were. approaching the bridge. He saw clothing and blood on the track out on the bridge for a distance of about 100 feet. On cross-examination he testified that the engine had no connection with the pump. There was no necessity to go on the track to regulate the pump. The men simply formed the habit and followed the practice. As a matter of fact, the valves were put in for the convenience of the foreman during the day when he had his workmen there. When the engine was not in operation you could hear the pump running. The valve was on the east side of the rail and on the outside of the track. It was the duty of Sutton to look out for all trains and to use a lantern to stop them. If he went on the track it was his duty to take a lantern. This witness also testified that decedent would occasionally go to sleep while on duty because of the fact that he failed to take sufficient rest in the day time.

For plaintiff it is urged that the evidence was sufficient to take the case to the jury. The argument is as follows: Sutton's duties required him occasionally to go to the valve. The fact that blood and clothing were found near the valve and could be traced along the track for 75 or 100 feet south shows that he was at the valve when struck. As his duties required him to be at that point occasionally, it is to be presumed that he was there for the purpose of attending to his duties. As his mangled body was seen in the center of the bridge about 4:10 A. M. by the engineer of Train 56, he certainly must have been struck and killed by Train 81. In view of the fact that Sutton was required to go upon the bridge for the performance of his work, it was the duty of the engineers in approaching the bridge to keep a lookout for him and to give timely warning of the approach of the train. The engineer of Train 81 gave no signal after passing the road about a half mile distant, and did not remember of having his attention fixed on the bridge as he approached it. Under these circumstances, it is insisted that the proof shows that Sutton was killed by reason of defendants' negligence in failing to keep a lookout for him and in failing to give a signal of the train's approach.

It is the well established rule in this and other jurisdictions that in the case of an action for damages for

death, it is not sufficient merely to show that the decedent was killed by the defendant and that the defendant was guilty of negligence. It must further appear that his death was caused by the proven negligence. C., N. O. & T. P. Ry. Co. v. Zachary's Admr., 32 Ky. Law Rep., 680; Stewart's Admr. v. N. C. & St. L. Ry. Co., 146 Ky., 131; Cooke-Jellico Coal Co. v. Richardson's Adm'x, 156 Ky., 617.

Following this rule, it is held that conjecture affords no sound basis for a verdict. It is not sufficient, therefore, to present a number of circumstances about which one might theorize as to the cause of the accident. Where it is sought to base an inference on a certain alleged fact, the fact itself must be clearly established. If the existence of such a fact depend on a prior inference, no subsequent inference can legitimately be based upon it. Atchison, T. & S. F. Ry. Co. v. De Sedillo, 219 Fed., 686; Chamberlayne's Modern Law of Evidence, 1029. The facts of this case afford no reasonable basis for the numerous presumptions that must be indulged in order to hold the company liable. It may be true, of course, that the decedent went upon the track to use the valve and was struck and killed by Train 81. On the other hand, it may be that he was struck and killed by some one and his body placed on the track. It may be that while not in the performance of his duties he went on the track immediately in front of the approaching train, and was struck by the train and carried or thrown to a point near the valve and then dragged along the track to the center of the bridge. It seems to us, therefore, that the facts relied on by plaintiff merely bring the case within the well established rule, that where an injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject it to liability, no recovery can be had. Wintuska's Adm. v. L. & N. R. R., 14 Ky. Law Rep., 579; Louisville Pillow Co. v. Kentucky Heating Co., 157 Ky., 247; Osborne's Admr. v. C., N. O. & T. P. Ry. Co., 158 Ky., 176; Hughes v. C., N. O. & T. P. Ry. Co., 91 Ky., 526; Patton v. T. & P. Ry. Co., 179 U. S., 658.

Judgment affirmed.