GALVESTON, H. & S. A. RY. CO. v. FRED.
(No. 5612.)

(Court of Civil Appeals of Texas. San Antonio.
March 1, 1916. On Motion for Rehearing,
May 10, 1916.)

1. NEGLIGENCE ☞121(5)—PROXIMATE CAUSE
—SHOWING BY CIRCUMSTANTIAL EVIDENCE—
PRESUMPTIONS.
   Proximate cause may be shown by circumstantial evidence, but cannot be presumed.
   [Ed. Note.—For other cases, see Negligence,
Cent. Dig. § 228; Dec. Dig. ☞121(5).]

2. MASTER AND SERVANT ☞276(2)—INJURIES
TO SERVANT — MANNER OF DEATH — SUFFI-
CIENCY OF EVIDENCE.
   In suit against a railroad company for
death of its yard clerk, evidence *held* to reasonably show that decedent did not fall from
the train which killed him while riding thereon,
or under it while trying to get on the engine.
   [Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 951, 959; Dec. Dig. ☞
276(2).]

3. MASTER AND SERVANT ☞276(5)—INJURIES
TO SERVANT—CAUSE OF DEATH—SUFFICIEN-
CY OF EVIDENCE.
   In an action against a railroad company
for the death of its yard clerk, evidence *held*
insufficient to show causal connection between
the road's failure to have a light on its engine
and the death of the clerk.
   [Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 951, 959; Dec. Dig. ☞
276(5).]

4. TRIAL ☞252(8) — INSTRUCTIONS—SUBMIS-
SION OF SPECIAL ISSUE.
   In an action against a railroad company
for death of its yard clerk, the submission of
the issue of failure to keep a lookout was erroneous, where the evidence did not show causal
connection between such failure and the accident.
   [Ed. Note.—For other cases, see Trial, Cent.
Dig. § 603; Dec. Dig. ☞252(8).]

5. APPEAL AND ERROR ☞1062(1)—HARMLESS
ERROR—SUBMISSION OF ISSUES.
   Error in submitting such issue was not
harmless.
   [Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4212; Dec. Dig. ☞
1062(1).]

On Motion for Rehearing.

6. MASTER AND SERVANT ☞265(15)—INJURIES
TO SERVANT—IGNORANCE OF APPROACH OF
TRAIN.
   In an action against a railroad company
for the death of its yard clerk, the ignorance of
the decedent of the approach of the train which
killed him cannot be inferred from the fact that
he was killed.
   [Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 893, 908; Dec. Dig. ☞
265(15).]

7. MASTER AND SERVANT ☞265(14)—INJURIES
TO SERVANT—PRESUMPTION OF CONTRIBUTO-
RY NEGLIGENCE.
   In an action against a railroad company
for the death of its yard clerk, it cannot be
presumed that decedent was guilty of negligence.
   [Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 893, 908; Dec. Dig. ☞
265(14).]

8. MASTER AND SERVANT ☞265(3)—INJURIES
TO SERVANT—BURDEN OF PROOF.
   In a widow's action against a railroad company for the death of its servant, plaintiff has
the burden to prove the road's negligence, and
that it caused her husband's death.
   [Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 879, 897; Dec. Dig. ☞
265(3).]

9. EVIDENCE ☞597—WEIGHT—SURMISE.
   Findings must rest on something more substantial than conjecture or surmise.
   [Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 2449; Dec. Dig. ☞597.]

Appeal from District Court, Victoria County; John M. Green, Judge.

Suit by Tommie K. Fred against the Galveston, Harrisburg & San Antonio Railway
Company. From a judgment for plaintiff, defendant appeals. Judgment reversed and re-
manded.

Baker, Botts, Parker & Garwood, of Houston, and Proctor, Vandenberge, Crain & Mitchell, of Victoria, for appellant. Fly & Ragsdale, of Victoria, for appellee.

MOURSUND, J. Appellee, in the capacity
of administratrix of the estate of her deceased husband, H. L. Fred, sued appellant
for the benefit of herself and her minor child,
seeking to recover damages by reason of the
death of said H. L. Fred, it being alleged
that his death was caused on November 22,
1913, by negligence of appellant. Appellee alleged that the deceased, while upon the track
of appellant, in its yards at Victoria, was
struck and run over by engine No. 613; the
acts relied on to constitute negligence alleged being the following:

(1) That appellant's employés violated certain rules with reference to the display of
lights on the engine, and but for such alleged
violation the deceased "could have and would
have seen the train approaching him, and
could have and would have avoided it, by
leaving the track upon which he was walking."

(2) That if the lights had been displayed as
required by said alleged rules, "the defendant and its employés operating said train
and engine 613 could have and would have
discovered said Fred on said track * * *
and his perilous position and imminent danger in time to have stopped said train of cars
before same struck him."

(3) That if said lights had been displayed
as required by said alleged rules, the operatives of engine 613 could have discovered
Fred in time to have warned him of his danger by ringing the bell and sounding the
whistle, and from which warnings Fred could
have taken notice and would have taken notice, and he could, from such warnings, have
removed himself from the track.

(4) That the employés on engine 613 failed
to ring the bell and sound the whistle as it
approached Cameron street crossing, and that
Fred could have and would have heard such
blowing of the whistle and ringing the bell,
and could have and would have removed
himself from the track, and that such fail-

ure was a violation of the city ordinance of Victoria and of a rule of appellant, alleging that there was a whistling post at Cameron street crossing.

(5) That engine 613, which it is alleged ran over Fred, was being operated within the corporate limits of Victoria at a greater speed than permitted by city ordinance.

(6) That the operatives of engine 613 negligently failed to exercise ordinary care to discover Fred on the track, and failed to give any warning of the approach of engine 613, from which warning he could have known of the approach of the train and engine and gotten off the track.

Appellant answered by general and special demurrers and by special denials, contending that it was not guilty of any acts of negligence and not liable by reason of the death of said Fred. The father and mother of said H. L. Fred disclaimed having any interest in the recovery sought. The trial resulted in a verdict and judgment in favor of appellee for $12,000, and in favor of appellant against the parents of Fred.

Appellant has two main line tracks extending through its yards at Victoria. These cross in said yards, and are referred to in the testimony as the Port Lavaca main line and the Houston main line. The Port Lavaca line running in a southerly direction is crossed at right angles by the line extending from Houston to Beeville. Appellant's freight depot is situated in the northerly part of the yard, north of the Houston main line, and the Port Lavaca main line extends past it. The passenger depot and roundhouse are situated on the Houston main line, west of the Port Lavaca main line. Parallel with the Port Lavaca main line on the west side of same, and extending through the yards, was a side track known as track No. 5. In order to move cars from the Port Lavaca main line and the freight depot to the passenger depot there is a curved track, known as the "cutoff" or "Y." This curved track leaves the Port Lavaca main line south of the freight depot, and extends in a southwesterly direction until it connects with the Houston main line. Fred was killed by a train on this curved track, late in the afternoon, November 22, 1913, one witness fixing the time at 6:08, while another thought it was about 7 o'clock. His wife testified she heard of his death at about 6:30 o'clock. The evidence warrants a finding that it was dark, or at least that darkness had begun to fall. The evidence is not as clear as it could be with regard to the exact place, one witness fixing it at about 250 feet from the railroad crossing, meaning the crossing of the two main lines, and 150 feet from the dirt road crossing. This dirt road crossing, he testified, is situated north of the place where Fred was killed, and just south of the switch leading to the curved track. Another witness said that Fred's body was 25 or 30 steps below the crossing on Cameron street. This is evidently the same

crossing referred to by the other witness. The evidence shows that Fred's body was found just a little beyond the frog of track No. 5 and the curved track switch. The body was cut in two; the lower half lying inside the rails of the curved track, and the upper part just on the outside of the rail next to side track No. 5. He was lying with his face down, with one arm under his head and the other stretched out. There were some cars standing on said side track No. 5 next to his head. A train, composed of engine No. 613, dead engine No. 625 and an oil car, came up the Port Lavaca main line, and stopped above the switch leading into the curved track. Engine No. 613 was pushing the dead engine and oil car ahead of it. The switch was thrown and this train passed down the curved track, the rear of engine No. 613, or rather the tender thereof, going first. There were no lights on this end of the train, but one witness testified there was a headlight on the engine. In this respect he was impeached by testimony of a statement made by him to the effect that there were no lights burning on the engine, either at the head or rear. No whistle was blown nor was the bell rung. The testimony shows that this train was the one which ran over Fred. The curved track was commonly used by pedestrians as a footpath day and night, which fact was known to appellant. Certain rules were introduced in evidence which required that when the cars are pushed by an engine, except when shifting or making up trains in the yards, a white light must be displayed on the leading car by night, and that the engine bell must be rung on approaching every public crossing at grade, and until it is passed, and the whistle sounded at all whistling posts. An ordinance of the city of Victoria was introduced which made it a penal offense to run or cause to be run any engine without ringing a bell before starting, and all the time such engine shall be in motion within the corporate limits of the city.

Appellee testified that Fred came home at about 5:10 p. m. and left at 5:30 on his bicycle to go back to the depot for the purpose of checking out a train which came in late. He was yard clerk, and had with him at his house the yard book used for the purpose of entering the initials and numbers of cars and trains. He took the book with him. There is no evidence in regard to where he went or what he did after leaving home. All that we know is that he left home, and that his dead body was found as before detailed.

[1] The testimony amply supports a finding that appellant was guilty of negligence in failing to have lights on the rear of the tender of the engine, and in failing to ring the bell. It does not, however, support a finding that no lookout was kept, for there is no direct evidence on that point, and it is not shown by circumstances. The serious question in this case is whether the evidence

will support a finding that the failure to have lights on the rear of the tender, or the failure to give signals, was the proximate cause of Fred's death. Proximate cause, as well as negligence, may be shown by circumstantial evidence. It cannot, however, be presumed. "There must be evidence sufficient to warrant a reasonable belief of the existence of the fact which is sought to be inferred."

[2, 3] In this case we think the evidence warrants a reasonable belief that Fred did not fall from the train while riding thereon or fall under the wheels while trying to get on the engine. It is true the evidence shows that blood was found on the driver of the engine, which fact is consistent with the theory that he fell while riding or attempting to get on between the engine and tender. But the position of the body when found indicates strongly that he was upon the track when struck, and did not fall between the engine and tender. However, conceding that he was upon the track, the evidence fails to show whether he had just stepped upon, or whether he was walking along the same. If walking, in which direction was he walking? Had he "checked up" the cars on the track No. 5, or was he going to check them up, or was he in the act of checking them up at the time he was killed? Or was he merely walking from the freight depot to the passenger depot or from the passenger depot to the freight depot? Where was he at the time the train passed up the main line close by the track on which he was killed, which was only a few minutes before his death? The evidence furnishes no answer to these questions. Did he know the train was approaching him, and try to cross in front of it, or wait too long before attempting to leave the track, and stumble and fall, or was he ignorant of the approach of the train until it was too late to escape? We cannot say. The evidence leaves us to surmise whether lights on the rear of the tender or signals would have apprised Fred of any danger which he did not know of and fully realize. As we are not permitted to base a finding upon mere surmise or conjecture, upon what evidence can we base a reasonable belief that he would not have fallen in front of the wheels had the signals been given or had there been lights on the end of the tender. There is none, unless it be presumed from the fact that he was killed. The failure to have a light on the tender of a backing engine might be the proximate cause of a person's death on account of rendering ineffective the lookout maintained. However, in the absence of testimony showing that a person has been on or close to the track long enough to enable the operatives of the train to see him in time enough to stop the engine or warn him, there can be no finding that the failure to have a light was the proximate cause of such person's death. We conclude that the evidence fails to show any causal connection between the negligence established and the death of Fred. M., K. & T. Ry. v. Greenwood, 40 Tex. Civ. App. 252, 89 S. W. 811; T. & P. Ry. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049; Bock v. Fellman, 173 S. W. 585; St. Louis, S. F. & T. Ry. v. West, 174 S. W. 292; Mt. Marion v. Holt, 54 Tex. Civ. App. 411, 118 S. W. 827.

In the case of Washington v. Railway Co., 90 Tex. 321, 38 S. W. 764, relied upon by appellee, the facts are different from those in this case. In that case the deceased was seen walking along the side of the track, and he was killed by reason of a collision between two sections of a train which caused an oil tank to be hurled from a car in the derailed train on top of him. The court held that the derailing of the train prima facie showed negligence, that an injury to passers-by should reasonably be anticipated, and that there were circumstances from which it could be found that Washington was on the path, and not riding on the train at the time he met his death. The Washington Case is in point in so far as the query is presented in this case whether there is any evidence to show that Fred was on the track at the time he was killed, which point has been hereinbefore discussed, but it furnishes no rule or precedent for determining whether the failure to maintain lights on the rear of the engine or to give signals can be said from the evidence adduced to have been the proximate cause of Fred's death.

Appellee also relies upon the case of Hutchens v. St. Louis S. W. Ry. Co., 40 Tex. Civ. App. 245, 89 S. W. 24. In that case the negligence consisted in the failure to keep a lookout at a place used as a pathway. In fact the court appears to have been of the opinion that the evidence would support a finding that Hutchens was a licensee. Hutchens was killed by being struck on the side of the head above the ear by the pilot beam; an oak splinter being driven into his brain. He was seen walking up the track just before the engine with the splintered beam left the station, and the path in which he was walking was about two feet from the end of the ties. The question of causal connection was not discussed, but evidently the court was of the opinion that the evidence would support a finding that if a lookout had been kept Hutchens would have been seen, and the engineer would have avoided striking him. The facts in the case of Ft. Worth & D. C. Ry. v. Broomhead, 140 S. W. 822, decided by this court, were similar to those in the Hutchens Case, and a recovery was sustained. However, those cases differ from the instant case in that the evidence therein showed that the deceased was walking along in a path close by the track with his back to the approaching train, at such a time it could reasonably be inferred that the operatives of the train saw him, or by keeping a proper watch along the track would have seen him in sufficient time to have avoided injuring him. In this case

we find no testimony from which we can infer that Fred was walking along the track or standing on the track a sufficient length of time for the operatives of the engine to have seen him by the aid of lights on the rear of the tender in time to have avoided injuring him.

[4, 5] As it will be the duty of the court, if the evidence is the same upon another trial, to instruct a verdict for defendant, it would be profitless to go into detail in discussing the many assignments of error presented, for many of them relate to questions which will be eliminated if sufficient evidence be adduced upon another trial to sustain a judgment. The assignments complaining of the submission of the issue of failure to keep a lookout are sustained, and the error in submitting such issue is not considered harmless as contended by appellee. Special charge No. 9 should have been given, as it presented in an affirmative manner a theory relied upon by defendant, which, if found to be true, precluded a recovery. The evidence supporting it is very slight, it is true; but there being evidence of the existence of blood on the driving wheel of the engine, and no evidence that there was any blood on the wheels of the tender nor any evidence that it was impossible for Fred to have fallen from between the tender and cab and landed in the position in which his body was found, it appears to us the special charge should have been given. There was no evidence to sustain the matters mentioned in the charge complained of in assignments Nos. 9 and 10, but these errors were harmless for the reason that it was immaterial whether Fred was engaged in his employment at the time he was killed and what his duties in his employment were. The charge is criticized on the ground that it permits a recovery upon the finding of matters which could not constitute negligence. While the wording of the charge is not as clear as it should be, we think the jury could not have failed to understand what was meant by the court. The issues raised by the assignments, other than those herein discussed, are decided against appellant.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

[6] Appellee contends that in our former opinion we failed to view the failure to keep lights on the end of the tender from the standpoint of the effect such lights would have produced in warning Fred of the approach of the train. Viewed from this standpoint, the failure to have lights is not shown to have been the proximate cause of Fred's death for the same reason that the failure to give signals was not proved to be the proximate cause. There is not a circumstance in the record from which it can be inferred that Fred was ignorant of the approach of the train. It is too well established to need citation of authorities that it cannot be inferred from the fact that he was killed. If he knew of the approach of the train in ample time to have left the track, if he was on it, the signals and lights could not have assisted him as alleged by plaintiff, and their absence could not be the proximate cause of his death. It is a mere matter of conjecture whether he knew the train was approaching. He may have known it and had ample time to leave the track, if standing on it or walking along it, but may have delayed too long, may have stumbled in trying to step therefrom and fallen, or may have tried to cross in front of the train, stumbled and fallen across the rail. When we examine the evidence from the viewpoint of the result of the failure to have lights which rendered ineffective such lookout as was maintained, we find that proximate cause is not shown because there is no evidence, direct or circumstantial, from which it can legitimately be inferred that Fred was on the track for such length of time that the operatives by maintaining a proper lookout, aided by lights, would have seen him in time to avoid injuring him. It is altogether a matter of conjecture whether he stepped suddenly on the track or whether he had been standing thereon for some time or walking along in the path between the rails. Proximate cause can be proved by circumstances, but we think there are no circumstances in this case from which it can legitimately be inferred. The uncertainty is disclosed by appellee's own argument, for therein it is contended that Fred was either standing on the track or checking up cars or was walking along the path leading from the passenger depot to the freight depot. To these theories of what he may have been doing just before his death others could be added. Appellee apparently believes that if Fred was upon the track when struck by the train, enough has been proven, that it should then be assumed that he was there long enough for the operatives of the engine to have seen him in time to save him, or assumed that he was ignorant of the approach of the train. These matters cannot be assumed; they must be proven.

[7, 8] Appellee confuses the issues of contributory negligence and proximate cause, and views our conclusion as one to the effect that Fred was guilty of contributory negligence, and therefore should not recover. We did not view the case from any such standpoint for Fred cannot be presumed to have been guilty of negligence, and the absence of evidence as to the circumstances surrounding his death as hereinbefore pointed out precludes any finding that he was negligent. The question whether he was guilty of negligence which proximately contributed to cause his death could not arise or be considered until it was first determined that the proven negligence of the company was a

proximate cause of the accident. The case cannot go to the jury upon the assumption that, where deceased is presumed to have been free from negligence, it must follow that defendant's negligence caused the accident. Such a theory does not take into consideration the fact that a man may be killed without being negligent himself, and without the defendant being negligent, or where being negligent, such negligence was in no way the cause of the accident. Plaintiff cannot, by reason of the presumption that deceased used due care, be relieved of the burden of proving not only negligence on the part of defendant, but that such negligence caused the death of her husband.

In the case of M., K. & T. Ry. v. Greenwood, cited in our former opinion, the defect in the evidence relied on to show causal connection was similar to that in this case, although the grounds of negligence relied upon differed from those in this case. The decision of this court was approved by the Supreme Court. Chief Justice Fly, then Associate Justice, said:

"Do those facts show that Charles Greenwood was killed through the negligence of appellant? In answering that question it must be kept in mind that the burden rested upon the plaintiffs in the court below to prove that the death of Charles Greenwood was caused through the negligence of appellant. We cannot go out into the field of speculation and theorize as to what may have thrown the deceased from the train and under the wheels of a car, but it must reasonably appear that his death occurred through the negligence of appellant. An analysis of the evidence does not meet the demands of that rule. All that the facts establish is that the boy was a brakeman on a train belonging to appellant, it was his duty at a certain place to make a coupling in front of the engine, and he was seen a few minutes before his death going towards the pilot of the engine and a short time afterwards was lying on the track in a mutilated condition. One step of the pilot was a little lower than the other, there was a slight defect in the coupler, the coupler had been up before the accident, afterwards it was down, and the road was rough and uneven at that point. There was no blood on the pilot or the step or wheels of the engine at the time, and no blood was found anywhere except on the wheels of a car eight or ten cars back from the engine. What caused the accident? Was it the coupler, the step, or the rough road, or all of them? Would it not be speculation of the purest type to hold that one, two, or all of the matters alluded to caused the accident? No one saw the accident; no one knows how it occurred. Theories may be constructed as to how the accident occurred and as to what caused it, but they are the filmy creations of the imagination, by which the rights of litigants should never be determined. The burden rested upon appellees to show how the catastrophe was caused, and, failing to do so, courts and juries cannot construct a case for them upon hypothesis and presumptions."

In the Kentucky case of Sutton's Adm'r v. Louisville & N. R. Co., 168 Ky. 81, 181 S. W. 938, it was contended that an employé was killed while in the performance of his duties on the track. The negligence consisted in failure to keep a lookout and give signals, and such negligence was proven. The circumstantial evidence tended, we think, more strongly than that in this case to show what the deceased was doing at the time death overtook him, but the court held the evidence insufficient to go to the jury, and said in part:

"It is the well-established rule in this and other jurisdictions that, in the case of an action for damages for death, it is not sufficient merely to show that the decedent was killed by the defendant and that the defendant was guilty of negligence. It must further appear that his death was caused by the proven negligence. (Citing cases.) Following this rule, it is held that conjecture affords no sound basis for a verdict. It is not sufficient, therefore, to present a number of circumstances about which one might theorize as to the cause of the accident. Where it is sought to base an inference on a certain alleged fact, the fact itself must be clearly established. If the existence of such a fact depend on a prior inference, no subsequent inference can legitimately be based upon it. Atchison, T. & S. F. Ry. Co. v. De Sedillo, 219 Fed. 686, 135 C. C. A. 358; Chamberlayne's Modern Law of Evidence, 1029."

We are not authorized to presume, from the fact that Fred left his house at about 5:30 p. m. for the purpose of checking up some cars, that he was engaged in that occupation at 6:08 p. m., or later, nor to infer that, if he was engaged in that occupation when he was run over, he had stood on the track such length of time that a proper lookout, with the aid of lights, would have enabled those in charge of the engine to save him, or to infer that in performing such work he stepped upon or remained upon the track in ignorance of the approach of the train.

[9] We attempted to state the facts bearing upon the issue of proximate cause in our former opinion, and no exception has been taken to such statement. It may be proper to add that Fred's wife testified at first that his hours of work ended at 5 p. m., and later fixed the time at 6 p. m. No witness testified to seeing Fred after he left home at 5:30 p. m. until his dead body was discovered. We cannot agree with appellee in her contention that the circumstances in evidence will support a finding that the acts of negligence proven proximately caused Fred's death. Were we to so find, it would in our opinion be contrary to the well-established rule that a finding must rest upon something more substantial than conjecture or surmise.

We conclude, however, that we erred in holding that special charge No. 9 should have been given, and therefore overrule the assignment of error.

The motion for rehearing is overruled.