## Donahue v. Louisville & N. R. Co. et al.

(Decided June 24, 1938.)

· FRANK J. DOUGHERTY and LAWRENCE S. LEOPOLD for appellant.

CRAWFORD, MIDDLETON, MILNER & SEELBACH for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At about 3:30 o'clock A. M. on December 16, 1935, Robert W. Slater, alias Robert W. Donahue, who was about 25 years of age, was driving a 1935 Ford sedan automobile east on Main Street in the city of Louisville, and while doing so it collided with the tender of a freight engine that at the time was switching some freight cars across Main Street, traveling north on the most eastern of four railroad tracks running north and south through and upon 14th Street which crossed Main Street at right angles. The collision produced injuries to the driver of the automobile from the effects of which he died shortly thereafter. His mother, the appellant, Mabel Donahue, qualified as his administratrix and later filed this action in the Jefferson circuit court against appellees and defendants below, Louisville and Nashville Railroad Company, and Pennsylvania Railroad Company (the latter owning the railroad tracks over which its lessee, Louisville and Nashville Railroad Company was at the time operating its switch train), to recover damages sustained by decedent's estate because of his alleged negligently produced death, by which his estate was deprived of his power to earn money.

Plaintiff's petition described the premises the movements of her decedent in driving the car, as well as that of the train with which it collided; the time of day the accident occurred; the direction in which the two involved transportation facilities were traveling, etc., and then charged as grounds for the right of recovery: "That defendants, Louisville and Nashville Railroad Company and Pennsylvania Railroad Company, and each of them, with gross negligence and carelessness, failed to use proper safeguards or to give timely warning of the approach of said train to said crossing at said time and place, thereby causing said train and plaintiff's intestate's automobile to collide, as a result

of which collision plaintiff's said intestate sustained injuries which caused the death of her said intestate within two hours after receiving said injuries.'' The separate answers of defendant denied all guilty allegations of the petition, and interposed in a separate paragraph the defense of contributory negligence, which was denied by reply, thus forming the issues. At the trial defendants at the close of plaintiff's testimony moved the court for a directed verdict in their behalf, which motion was sustained, followed by a verdict as directed, and the petition was dismissed. Plaintiff's motion for a new trial was overruled—followed by this appeal by her.

The only act of negligence to which plaintiff directed any of her testimony, and the only one argued on this appeal, was the alleged failure of the provided safeguard automatic gates across Main Street, to properly function. (or rather the one on the west side of the track to do so) upon the occasion of the accident, and which failure—according to counsels' argument—was the proximate cause of the fatal collision. The proof heard, and the argument of counsel so made, narrowed the averments of the petition in charging that defendants "failed to use proper safeguards *or to give timely warning of the approach of said train to said crossing.*" (Our italics.) Not a breath of evidence is found throughout the record of any failure on the part of defendants to give warning of the approach of the train to the crossing. The *only* ground urged in support of the negligence charged in the petition, we repeat, was and is the failure of the safeguarding gate on the west side of the railroad tracks to be down at the time deceased approached the intersection on the occasion of the collision. No eye-witness testified in the case, and the only testimony heard at the trial was directed towards the proof of partially established facts from which the main guilty fact could, as insisted, be inferred, and which guilty fact was the failure of the west gates to be down.

The train with which the collision was made by the decedent's automobile was traveling north on 14th Street; while he was traveling east on Main Street. There were four tracks in 14th Street and the train was upon the extreme east one, moving backwards with the tender of the engine in front, and the automobile

struck the side of it somewhere between its center and its front end next to the engine. The rear end of the tender had partially passed over Main Street with the coupling between it and the engine near the point where one traveling on the right side of Main Street, going in the direction that decedent was moving, would collide with the train somewhere near that coupling. No obstructions of any kind prevented his seeing the approach of the train for a considerable distance, or its entry upon the intersection before he arrived at 14th Street, either in the way of houses, embankments, trees, shrubbery, or of any other kind or nature. No one who testified (none of the train crew being introduced) discovered the happening of the accident until sometime thereafter when it was found that the automobile was to a great extent demolished and that its driver was seriously injured beyond the possibility of recovery. At the time of such belated discovery the gates on both sides of 14th Street were up; but perhaps thirty minutes or more had elapsed since the accident.

Either the next morning or a day or two thereafter (it being immaterial which), witnesses examined the west gate supposed to automatically close Main Street on that side, and it was found to be intact. It consisted of two upright levers made of wood so constructed as that they would lower upon the approach of a train to the crossing, and their upper ends would practically meet when stretched longitudinally across the street. The lever on the south side of Main street appears to have been longer than the one on the north side, and it (the one on the south side), and perhaps, also the one on the north side, was composed of three separate pieces of timber. The first one (at the base) served as a guard across the sidewalk; the second one extended some distance out into the street and from thence forward there was a third piece of timber which it is claimed by defendants (and not denied by plaintiff) was made of cypress which was much thinner and narrower than the other pieces of timber making up the lever for one half of the gate, and which also is more pliable. When lowered to their serving capacity the two levers occupied a longitudinal position five feet from the ground; while the automobile, from the ground to the highest part of its top, was five feet and seven inches. A picture of it introduced at the trial showed that its front part, containing the windshield and extending

from the inner end of the hood to the top of the automobile, was obliquely constructed at an angle of something like forty-five degrees; so that the two levers forming the gate would be, if down, contacted by the automobile upon that slanting surface at a point seven inches below the top of the automobile bed. It is also shown that the parts of the levers (forming the gate) that would be so contacted were the ones made of the more pliable and tough cypress timber. However, neither of the levers was broken, nor were any scratches found on the surface of any part of the automobile bed indicating a contact with any object. It, however, furthermore appeared in the proof that the gates, when down, were almost equally balanced upon the axis in which they were fitted because of the heavy parts at their lower end which extended beyond the axis in which the levers or gates worked. So that, a slight lifting of them at their upper extreme ends (in a longitudinal position across the street) would cause them to elevate and which would require only a slight lifting to produce.

No part of either of them was broken, and because thereof—and because of the further fact that witnesses testified to no scars on the part of the automobile where the contact would likely occur—learned counsel for plaintiff confidently argue and assert that it was thereby proved beyond the possibility of controversy that the west gate across Main Street was open and not down when decedent approached the intersection where he met his death. Counsel then argue, without any evidence on the point whatever, that such failure was the proximate cause of the fatal accident. They introduced a garage man who testified that in his opinion the collision of an automoblie with a closed gate like the one here involved would produce some scar (which the evidence did not show) on the automobile bed; and they also introduced a witness—claiming to be versed in the quality of various kinds of timber—who testified that he examined the involved west gate the next morning following the accident, or a day or two thereafter and the part that he examined was made of white pine,. which, according to his opinion, could not withstand, without breaking, a collision with an automobile traveling the street spanned by a gate made of that material. On cross examination, however, he admitted that the only part of the gate that he examined was that portion of it spanning the *sidewalk,* and that he examined

none of the timber of the lever forming the gate when it was down across the street. He stated that white pine was brittle, as well as soft, and that a collision of the character described would quite certainly break it. Since, however, he did not examine or profess to say what would be the consequences with reference to a different kind of timber, his testimony has but little, if any weight. It would also seem to be true that the garage man, who testified in the case, would have extreme difficulty in determining from an examination of the front of the involved automobile—after it had collided with the side of the railroad tender with enough force to kill its driver—whether it had or had not come in contact with a safety guard railroad gate made of frail timber and equibalanced adjustment as above described. We, therefore, see that plaintiff's argument comes to this: That the west gate alongside of the railroad track across Main Street was unbroken when first observed after the accident, although the tip ends *were* slightly scarred; that the automobile bed was not scarred on any part of its slanting windshield surface in a manner so as to indicate a collision, and that according to the testimony of the garage witness, and the timber witness, such conditions would not be likely to exist according to their opinion if the gate was down and there had been a collision of the automobile with it. It is, therefore, concluded as a positive fact (and so argued here) that the gate on the side of the tracks approached by the decedent in driving his automobile was open and not closed; and that such failure to not have it closed was negligence which was the proximate cause of the fatal accident.

Having arrived at that conclusion by that somewhat fantastic process of reasoning counsel then strenuously argue that the court erred in giving the peremptory instruction complained of. In their effort to substantiate that contention they cite a number of cases from this court. The strongest one, and the one wherein the facts approach nearest to the facts of this case, is Louisville & Nashville Railroad Company v. Snow's Adm'r, 235 Ky. 211, 30 S. W. (2d) 885. But a mere casual reading of that opinion will demonstrate that its facts are far removed from those appearing in this case. One crucial and most outstanding fact necessary to recovery was undisputably proven and freely admitted to be true in the Snow Case; but which essen-

tial and crucial fact is the very one submitted and argued on this appeal. The crucial fact in each case was of course, the actual happening or existence of the one or ones constituting the negligence relied on. In the Snow Case it was the maintenance and negligent failure to remove a dangerous obstruction on the walkway of the railroad bridge then being traveled by the decedent, Snow, and which the proof showed was inevitably the cause of the accident resulting in his death. Proximate cause of an admittedly negligent act was the only question involved. On the other hand, in this case the only negligent act relied on was and is the failure to maintain the safety gates at 14th Street on the west side of the railroad track in a condition that they would automatically operate and lower across the street upon the approach of a train to the crossing. Therefore, the alleged negligent fact is in issue.

Plaintiff's counsel, as we have seen, seek to establish that fact from the circumstances we have related, and to then confidently conclude that such failure was the proximate cause of decedent's death. In drawing the inferences upon which their positive conclusion rests they have entirely overlooked these facts, which are largely *influential* in the formation of a correct conclusion of what happened. Such overlooked facts are: That the part of the automobile bed that would naturally come in collision with the gate if it was down, slanted at an angle of about forty-five degrees; that a slight lifting of the gate that would be produced by such a contact would cause the levers or arms to rise so that the entire automobile bed could easily pass under it without injuring it, and that the slanting surface where the contact was made would very readily contribute to such a lifting of the gate—and especially so with the aid of its balancing lower end beyond the axis in which it worked. Such consequences are just as scientifically probable (and perhaps more so) as the ones insisted upon by counsel for plaintiff as based upon the testimony of the witnesses to which we have referred.

Thus far we have discussed only the phase of the case to which counsel for plaintiff devote their entire brief. We are aware that the law does not presume negligence on the part of the defendant in this character of action, nor on the part of the plaintiff so as to charge him with contributory negligence. That propo-

sition is admitted by counsel for plaintiff; but their argument, as based on the testimony which we have related, would seem to be directed contrary to that well established rule. They also ignore other facts in the case from which negligence on the part of their client's decedent might also be inferred. Moreover, there is no pretense at showing that the gate across Main street on its *east* side was not normally functioning on that occasion. If it were down as decedent approached the crossing it would have served as a warning against entering upon the crossing practically to the same extent that the west gate, if down, would have done.

Without consuming more time or space we conclude that this case is governed by the principles announced by us in the case of Siemer v. Chesapeake & Ohio Railroad Company, 180 Ky. 111, 201 S. W. 469, and cases therein cited. The two questions therein involved were the same as those involved here, i. e. proof of the negligent act, and that it proximately produced the injury complained of. The opinion contains the facts relating to those two issues. They will not be repeated here since it is sufficient to say that we held therein that the testimony failed to establish either, and that the trial court did not err in directing a verdict for defendant therein. Among the cases cited in that opinion is Sutton's Adm'r v. Louisville & Nashville Railroad Company, 168 Ky. 81, 181 S. W. 938, from which opinion we approvingly took this excerpt (page 940):

"It is the well-established rule in this and other jurisdictions that, in the case of an action for damages for death, it is not sufficient merely to show that the decedent was killed by the defendant and that the defendant was guilty of negligence. It must also appear that his death was caused by the proven negligence. * * * Where it is sought to base an inference on a certain alleged fact, that fact itself must be clearly established. If the existence of such a fact depend on a prior inference, no subsequent inferences can legitimately be based upon it."

Without further elaboration we conclude that the judgment was proper, and for which reason it is affirmed.