CASE 69.—ACTION BY WILLIAM MATTHEWS' ADMINISTRA-
TOR AGAINST THE LOUISVILLE & NASHVILLE R.
R. CO. FOR DAMAGES FOR CAUSING HIS DEATH.—
November 20.

# Matthews' Admr. v. L. & N. R. R. Co.

Appeal from Webster Circuit Court.

J. W. HENSON, Circuit Judge.

Judgment for defendant, plaintiff appeals—Af-
firmed.

1.  Master and Servant—Injury to Brakeman—Negligence of
Engineer.—The engineer is not shown to have been negligent
in backing the engine with some cars into the rest of the train,
causing the fall of deceased, a brakeman, standing on one of
the cars, though deceased gave a signal to back the train, as
H., a fellow brakeman on the ground, who had just coupled
the engine to the cars with it, signaled to go forward, and the
engineer obeyed H.,s signal; it not being shown how deceased
signaled, or that the engineer saw or could have seen him or
his signal, and the engineer testifying that he received no
signal to back and did not know deceased was on the car.
2.  Master and Servant—Negligence of Fellow Servant.—Any neg-
ligence of a brakeman in signaling to the engineer to go for-
ward, when he had seen another brakeman give a signal to
back, compliance with his signal causing a collision of cars
and injury to the other brakeman, was the negligence of a
fellow servant of the injured person.
3.  Master and Servant—Injury to Servant—Negligence.—To make
a railroad company liable for injury to a brakeman by the
bumping together of parts of a train, causing his fall from one
of the cars, it must be shown that the movement of the train
was with unnecessary force and not of a usual character.
4.  Trial—Instructions.—The instructions given fairly presenting
the law of the case, and, leaving unsaid nothing needed for the
guidance of the jury, other requested instructions are properly
refused.

5. Evidence—Qualification of Experts.—Men experienced in railroading and the operation of trains and more or less familiar with the accidents incident to railroad life are qualified as experts to express the opinion that the moving forward of a car was the best and safest means of extricating one under its wheels.

6. Evidence—Res Gestae.—Where a brakeman was thrown from a car under its wheels, what he said after being taken therefrom to another place, as to how he was injured, is not admissible as part of the resgestae.

7. Appeal and Error—Harmless Error—Exclusion of Cumulative Evidence.—Exclusion of evidence of what one, after being taken from under a car to another place, said as to how the accident happened, even if error, was harmless; others having testified to substantially similar statements of his while under the car.

8. Trial—Placing Witnesses Under the Rule—Discretion.—Allowing a witness to stay in the court room to assist in the trial, while others are excluded, under the rule, is in the discretion of the trial court.

GORDON, GORDON & COX for appellant.

SYNOPSIS.

1. The court erred in rejecting the testimony of Moses Howard.

2. Numerous other errors prejudicial to the substantial rights of appellant were committed by the trial court in the admission and rejection of testimony.

3. The court abused its discretion in allowing witness Bramwell to testify after the witnesses had been put under the rule, said Bramwell having remained in the court room and heard the testimony of all witnesses on both sides before being offered as a witness in chief.

The court erred in not allowing appellant to introduce testimony to contradict appellee's witness Bramwell.

5. The instructions of the court given to the jury are without a precedent, are grossly erroneous and so framed as to unduly influence the verdict of the jury, and the adverse verdict is traceable to this error. (Brents, by., &c., v. L. & N. R. R. Co., 31 Ky. Law Rep. 1216.)

YEAMAN & YEAMAN and BENJAMIN D. WARFIELD for appellee.

Matthews' Admr. v. L. & N. R. R. Co.

## POINTS AND AUTHORITIES.

1. The petition states no cause of action; and for that reason there should have been a peremptory instruction to find for defendant (appellee). (Burton v. Magan-Faulk Lumber Co., 25 Ky. Law Rep. 40; L. & P. Canal Co. v. Murphy, 9 Bush 527; Stivers v. Baker, 87 Ky. 508; L. & N. R. R. Co. v. Paynter's Admr., 26 Ky. Law Rep. 761.)

2. There was no sudden or unusual movement of the train; and had there been, it would not, under the circumstances of this case, furnish any ground of action. (L. & N. R. R. Co. v. Fox, 20 Ky. Law Rep. 81; C. & O. T. R. Co. v. Jackson, 22 Ky. Law Rep. 630; Yates v. Miller's, &c., Co., 28 Ky. Law Rep. 331; Williams v. L. & N. R. R. Co., 103 Ky. 229; Groves v. L. & N. R R. Co., 29 Ky. Law Rep. 725; L. & N. R. R. Co. v. Morris, 23 Ky. Law Rep. 449.)

3. There was no evidence whatever that the fall of Matthews from the car was caused by any negligence of those in charge of the train, and it would have been error to submit any such question. (L. & N. R. R. Co. v. McCombs, 21 Ky. Law Rep. 1238.)

4. Matthews was extricated from his perilous position under the car in the best and safest way, and without inflicting additional injury.

5. The court did not abuse its discretion in allowing appellee's witness Bramwell to remain in the court room after a separate examination of witnesses had been ordered, and then to testify. (Civil Code, section 601; Johnson v. Clem, 82 Ky. 84; Warden v. M., H. & E. R. Co., 31 Ky. Law Rep. 34.)

6. There being no scintilla of evidence of neglect causing Matthews' fall from the train, the court would not have been authorized to submit that matter to the jury.

7. The instruction to the effect that Matthews assumed the ordinary risks incident to the employment was such as this court has approved. (L. & N. R. R. Co. v. Babcock, 107 Ky. 223; L. & N. R. R. Co. v. Milligan's Admr., 21 Ky. Law Rep. 489; C., N. O. & T. P. Ry. Co. v. Evans' Admr., 33 Ky. Law Rep. 596.)

8. Appellant's sixth, seventh and eleventh grounds for new trial are too vague and general to call the court's attention to any alleged error complained of. (Dibble v. McClain, 13 Bush 297; Jones v. Wosher, 90 Ky. 230.)

9. Instructions A and B asked by appellant were properly refused, and instructions C and D were fully covered by those given by the court.

10. There being no error prejudicial to appellant's rights, the judgment should be affirmed. (Civil Code, sections 134, 338, 756.)

Opinion of the Court by Judge Settle—Affirming.

On the night of December 14, 1906, appellant's intestate, Wm. Matthews, at the time a brakeman upon one of appellee's trains, fell at Providence, Ky., from a stock car onto the railroad track, and was run over by the front wheels of a flat car, which broke and mangled both of his legs and otherwise injured him to such an extent that he died that night of the accident. He was a married man, 38 years of age, was then earning $60 to $75 per month, and had been in appellee's service as a brakeman about five years. His administrator brought this action to recover of appellee damages for his death. The answer of appellee contained a traverse and charged appellant's intestate with contributory negligence, and this plea was controverted by reply. The trial resulted in a verdict and judgment in favor of appellee. Thereupon appellant entered motion and filed grounds for a new trial, but the lower court overruled the motion, and this appeal followed.

The train upon which the intestate was a brakeman was a mixed passenger and freight train, and according to the evidence its locomotive, after leaving two freight cars on a side track, went on the house track for the purpose of getting a stock car and flat car that were standing thereon, and, having coupled to these, it moved out toward the main track, but stopped before the flat car, which was in the rear of the stock car, got entirely upon the main track. Immediately following the stop, the engineer, in obedience to a go-ahead signal from the brakeman Holloman, who had done the coupling and was standing

on the ground by the flat car, again started the locomotive and two cars attached. At this juncture, the intestate, who was standing on the rear end of the stock car, lost his equilibrium and fell to the ground in front of the flat car, a front wheel of which ran over his legs, crushing them, as previously stated. It further appears from the evidence that, when the intestate realized that he was about to fall from the stock car, he attempted to jump upon the flat car, but was prevented from reaching it by a piece of timber extending across its front at a height of two feet from its floor. The stunning effect of the contact with this cross-bar rendered more certain his fall to the track below. His fellow brakeman, Holloman, upon seeing the intestate in the act of falling, called to him to jump to the flat car, and promptly signaled to the engineer to stop the locomotive; but this could not be done until one of the wheels of the car had passed over his legs. The sudden stopping of the locomotive resulted in a slight rebound of the two cars attached to it, and this caused the wheel of the flat car, which had just run over the intestate's legs, to back against them and upon some of his flesh and clothing, thereby pinioning him to the track. The intestate received some injury to his breast or stomach, evidently caused by his contact with the cross-timber on the flat car, from the brake beam under the car, or by the moving of the car after his fall to enable the train crew and others assisting them to remove his body from the track. It was found by them that the body would have to be released from the pressure of the car wheel before it could be removed from under the car. A brief discussion arose as to the best means of getting the intestate released. One or more favored the use of

a "jack" with which to raise the car, but the conductor and others thought a slight forward movement of the car would more quickly and safely accomplish his release, and the latter method was the one adopted. So the car was moved forward, not more than two feet, by the engineer, which released the intestate, who was thereupon carried to a hotel near by, where he remained until his death. We are unable to find from the record that the witnesses disagreed as to the facts thus far stated. There were, however, disagreements as to certain other matters of evidence to which we will later advert.

Appellant's chief complaint is that the trial court erred in instructing the jury, in that they confined appellant's right to recover to the negligence, if any, of appellee's servants in the matter of extricating the intestate's body from beneath the train, and allowed no consideration by the jury of the question of whether his fall from the stock car was caused by their negligence. We are satisfied the court committed no error in the particular indicated. There was no evidence conducing in the slightest degree to prove that the fall of the intestate from the car was caused by negligence on the part of appellee's servants. It is true one or two persons testified that the intestate, while under the car, or near it, and immediately following his removal from beneath it, said he gave a signal to back the train as Holloman, his fellow brakeman on the ground, signaled it to go forward, and that the engineer obeyed Holloman's signal by moving the train forward, which, being unexpected to the intestate, caused him to lose his balance and fall off the car. We may concede that this statement of the intestate was near enough to the accident and sufficiently connected with it to make

it a part of the res gestae; but it shows no negligence on the part of the engineer, for the intestate did not say, nor did any other witness state, that the engineer saw or could have seen a signal given by the intestate, or that the latter was so situated as to enable the engineer to see him. In what way or by what means the intestate signaled the engineer to back the train did not appear even from the intestate's declaration. The engineer testified that he received no signal on that occasion to back the train, and that he did not know the intestate was upon the top of the stock car. He further testified, however, that he received from the other brakeman, Holloman, who had just coupled the locomotive to the stock and flat car, and whom he knew to be then standing on the ground, a signal to move the train forward, which he obeyed. If it could be said that Holloman saw the intestate's signal to back, and was guilty of negligence in giving at the same time a signal to the engineer to go forward, if he did so, appellee would not be responsible for such negligence, as Holloman was a fellow servant of the intestate.

It is likewise true that the evidence failed to show that the engineer was negligent in the manner of moving the train at the time the intestate fell from the car. There was no sudden jerking or other unusual movement of the train. In order to fasten responsibility upon a railroad company for injury to an employe by a fall from its train caused by the movements thereof, it must be made to appear that the movement was one of unnecessary force, and not of a character usual in the operation of such a train. An illustration of our meaning may be found in the case of Yates v. Millers Creek Const. Co., 89 S. W. 241, 28 Ky. Law Rep. 331, wherein it is said: "The

fact that there was a sudden or even hard jerk of the tender by the engine does not prove that the engineer or fireman was negligent. * * * The proof wholly fails to show that the jerk that threw the appellant from the tender was not such as usually attends the movement of such a train, or that it was of unusual force, or was caused by any unnecessary force applied to the train through the engine or in the manner of operating it.'' C., N. O. & T. P. Ry. Co. v. Jackson, 22 Ky. Law Rep. 630, 58 S. W. 526; L. & N. R. R. Co. v. Fox's Admr., 42 S. W. 922, 20 Ky. Law Rep. 81. In confining the jury, by the instructions given, to the sole issue as to whether appellee's servants were guilty of negligence in adopting the means used to remove the intestate from beneath the car, after its wheels had broken and mangled his legs, the court granted him all he was entitled to under the pleadings and proof. The instructions were as follows: ''(1) Gentlemen of the jury, the court instructs you that the deceased, W. S. Matthews, in entering the employment of the defendant, assumed all the ordinary risks necessarily incident to the character of work in which he was then engaged at the time of his injury, so you will therefore find for the defendant, unless you shall believe from the evidence that after the deceased, W. S. Matthews, was thrown or fell under the car at the time and place mentioned in the evidence, and after his dangerous position was known to defendant's employes in charge of the train, they, the said employes so in charge, could by the exercise of ordinary care have released him from his then position and avoided further injury to him, and if you shall further believe from the evidence that, in attempting to and in releasing said deceased at said

time, they failed to use such care, and by reason thereof said deceased was injured by defendant's said employes to such an extent that it directly contributed to or caused his death, then and in that event the law is for the plaintiff, and you should so find, and in your verdict award to the plaintiff such an amount in damages as will fairly and reasonably compensate the estate of said Matthews for the destruction of his power to earn money, not exceeding the sum of $25,000, the amount claimed in the petition. (2) The court further instructs you that unless you shall believe from the evidence that the injury to the deceased, Matthews, that caused, or that directly contributed to, his death, was caused by defendant's employes in charge of said train failing to use ordinary care in removing or releasing said Matthews from under said car after discovering his position, then in that event you will find for defendant. (3) The court further instructs you that, although you may believe from the evidence that when the deceased, Matthews, fell or was thrown under the car, he was in great peril, and that to move the car was not the best or safest way to rescue or remove him, yet if you shall also believe from the evidence that the persons in charge of said train did in good faith, and in accordance with their best judgment, under the circumstances, as they then appeared to them, adopted that method of rescuing or removing him, provided in so doing they used ordinary care, then in that event the defendant is not liable for not having adopted some other method of removing him, and you should so find. (4) The court further instructs you that by 'ordinary care' as used in the foregoing instruction is meant such care as an ordinarily prudent person would usually exercise in like

business and under the same or similar circumstances as proven in this case." The instructions fairly presented the law of the case and left nothing unsaid that was needed for the guidance of the jury. If correct in this conclusion, the instructions offered by appellant were properly refused by the trial court.

The testimony with respect to the main issue was conflicting. Without discussing it in detail, that of appellant, though by no means convincing, tended to prove that appellee's servants, by using the "jack" and lifting the end of the flat car, could have readily and quickly released the intestate from his then position without further injury to him; but that the method adopted by appellee's servants for his release—that is, of moving the car forward—not only caused additional injury to his legs, but wholly caused the injury to his breast or stomach, which resulted from the pressure thereon of the brake beam under the car as it was moved forward; and, further, that these additional injuries certainly hastened, and otherwise directly contributed to, his death. When we turn to appellee's testimony, it throws an entirely different light upon the transaction, as is strongly conduced to establish the following facts: (1) That the bruise or injury to the intestate's breast or stomach was received in falling from the stock car and by his coming in contact with the cross-bar or timber on the end of the flat car; (2) that in view of the excruciating sufferings of the intestate while pinioned to the track by the wheels of the flat car, and the imminent danger of immediate death if not at once released, the moving of the car; in the judgment of appellee's servants, afforded the quickest and safest means of effecting his release, and for these reasons, and none other, the method of moving

the car was resorted to; (3) that it would have taken
from 10 to 15 minutes to have removed the car from
the intestate's body with the "jack," and the opera-
tion would have been attended with greater risk and
danger to him, than by the moving of the car; (4)
that in releasing the intestate the car was moved
gently and only about two feet, and the removal of
the intestate's body from beneath the car was un-
attended by any additional injury to him. Upon these
facts and under the instructions copied in the opinion
the case went to the jury, and we are not disposed
to say that the verdict was not authorized. On the
contrary, we think it supported by the weight of the
evidence. Indeed, the evidence as a whole demon-
strates the good faith and good judgment of appellee's
servants in what they did to release the intestate from
the situation of peril and torture in which he had un-
fortunately been placed by an accident for which
neither he nor his fellow trainmen were in any sense
to blame.

We find little force in appellant's complaint that
appellee's witnesses were not experts, and consequent-
ly, that their expressions of opinion to the effect that
the moving of the car afforded the best and safest
means of extricating the intestate from his perilous
position should have been excluded. The witnesses
referred to were men experienced in railroading, in
the operation of trains, and more or less familiar with
the accidents incident to railroad life. Their testi-
mony amounted to more than a mere expression of
opinion, and we think there was sufficient proof of
their qualification as experts to express an opinion
upon the subject in question.

We find no error in the exclusion by the court of
the testimony of appellee Howard as to what was said

by the intestate after his removal to the hotel in regard to the manner in which his injuries were received. The statement was too remote from the main transaction to constitute a part of the res gestae. Besides, if its competency were free from doubt, its exclusion could not have been so prejudicial as to authorize a reversal, for it was, at most, but cumulative. Other witnesses testified to substantially similar statements made by the intestate while he was under the car, with respect to the competency of which there can be no doubt.

It is also insisted for appellant that the court, after granting the separation of witnesses on the trial, erred in allowing appellee's conductor, Bramwell, to remain in the courtroom and thereafter to testify as a witness for appellee. It appears that Bramwell was allowed to remain in the courtroom at the request of appellee's counsel, made when the separation of witnesses was ordered, and that he sat with and advised counsel during the trial as the agent or representative of appellee. Doubtless this was because of his familiarity with the facts of the case. At any rate, it was allowed by the court, and the question of whether he should or should not have been excluded under the rule was a matter of discretion with the trial court, which this court will not attempt to control.

Finding in the record no error that will authorize a reversal, the judgment is affirmed.