## Pruitt v. Norfolk & Western Railway Company.

### (Decided May 18, 1920.)

### Appeal from Boyd Circuit Court.

1. Master and Servant—Contributory Negligence—Federal Employers' Liability Act.—Under the Federal Employers' Liability Act, in an action by an employee to recover damages for an injury caused by the negligence of the employer, the defense of contributory negligence is not available to the employer, when the injury complained of resulted, in whole or in part, from a violation by the employer of a federal statute enacted for the promotion of the safety of employees, but, in an action of an employee for an injury attributable to the negligence of the employer, other than where the injury was caused by the violation by the employee of such a statute, as described above, the defence of contributory negligence is available to the employer, only, as a means of diminishing the damages.

2.  Master and Servant—Federal Employers' Liability Act—Assumption of Risk.—Under the Federal Employers' Liability Act, in an action by an employee for damages for an injury attributable to the negligence of the employer, the defense of assumed risk by the employee is available to the employer, as a defense, unless the injury was caused, in whole or in part, by the violation of a statute by the employer, which was enacted to promote the safety of employees.

3.  Master and Servant—Duty of Master to Instruct Servant.—If the work, or the place wherein it is to be done, is dangerous and the master knows, or ought to know, that the servant, because of youth, inexperience or want of capacity, does not appreciate the dangers incident to the work, it is the duty of the master to warn and instruct him, as to the performance of the work, and the dangers incident thereto.

4.  Master and Servant—When Master is Under No Duty to Instruct Servant.—If the work and the place where it is to be done are not dangerous; are simple and any person of ordinary intelligence can readily see and understand the dangers attendant upon it, and nothing is required for its execution except ordinary intelligence and the physical strength to perform it; or if the servant is already acquainted with the method of doing the work and the dangers incident to it, and there is nothing to be told to him which he does not already know, there is no duty of the master to warn or instruct the servant.

5.  Master and Servant—Negligence.—To conduct simple operations which are not dangerous and the method of performing which are thoroughly understood by the servants, and it is performed in the usual and customary way, and no intricacies are involved in its performance, and the men, who are engaged in it, are in the immediate presence of each other, and nothing is done, except by the co-operation of each one, with the others, and with the knowledge of all, the failure of the master to stand immediately by and direct each movement, is not negligence.

6.  Master and Servant—Inspection of Tools and Appliances.—Simple tools like hoes, picks, shovels, chisels, punches and such like, which are furnished to employees, with which to work, and where the employees have an opportunity for inspection and are in reasonably good condition for the uses for which they are designed when furnished, are the subjects of an exception to the rule which requires an employer to test, inspect and keep in repair the tools and appliances furnished employees, with which to do their work.

ALLAN D. COLE, D. E. ERNST and H. W. COLE for appellant.

HOLT, DUNCAN & HOLT for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This action was instituted by the appellant, J. W. Pruitt, against the appellee, Norfolk & Western Ry. Co., to recover damages for the loss of one of his feet, which he averred was the result of negligence upon the part of the railway company. Pruitt was a section hand at the time of the injury suffered by him, and was engaged, together with others, under the directions of a section foreman, in repairing the track of a switch of the railway company near West Ironton, Ohio. The switch was used by the railway company in transporting materials to and the manufactured products from a plant engaged in the manufacture of steel, and some of the articles, which were transported to the plant were brought there from places, without the state of Ohio, over the tracks of the railway company, including the switch. At the point at which Pruitt and his fellow workmen were engaged, the switch track appears, from the evidence, to have been upon very high ground, between a creek upon one side, and the Ohio river upon the other. It does not distinctly appear whether the switch track at this place consisted of three or four rails, but the land on the side nearest to the creek was level for a distance of from four to seven feet from the nearest rail, and then descended abruptly to the bed of the creek, a distance of from thirty to eighty feet, as deposed by the witnesses. On the other side the level land extended from the nearest rail on that side for a distance of from ten to fifteen feet, before it began to descend to the river. A tie in the road bed having decayed, it became necessary to remove it and to put a new tie in its place, and four of the section gang, with Pruitt among the number, were directed by the foreman to do this piece of repairing, while other members of the gang were engaged nearby in similar work. The three men who were directed, with the assistance of Pruitt, to take out the old tie and to replace it with a new one, were individuals of many years' experience in that kind of work, and one of them had theretofore performed the duties of a foreman in such and other work upon railroad tracks. Pruitt at the time was above fifty (50) years of age and had been engaged, for the preceding sixty days, with an occasional day off, as a member of this same section gang, in working upon the tracks of the railway, and while he says that was the first time upon which he had undertaken to assist in removing a decayed tie and replacing it with a sound one, that the

gang had done such work upon nearly every day upon which he had been in the service of the railway company, and that he had frequently witnessed such work, and was well acquainted with the manner in which it was done. Evidently, Pruitt was well acquainted with the method and manner in which such work was usually done, from the fact that he describes in his testimony, with particularity the usual way and the method which was made use of by the section men in doing such work. The usual and customary way in which an unsound tie was removed, and a sound one put in its stead, was as follows: The rails of the tracks were hoisted to a distance of three or four inches above the ground, with an apparatus for that purpose, when the old tie was removed by the men, by the use of picks, and from the bed from which it was removed the loose dirt and other debris were removed, so as to make a trench for the reception of the new tie. An end of the new tie was then inserted under the rail, through the trench, and while some of the men, taking hold of it with their hands, shoved it under the rails, the others sticking their picks into it added their exertions in pulling the tie into its proper place. The one nearest the forward end of the tie, with his pick stuck into it, is expected to guide it through the trench, as well as to assist in putting it through. In accordance with the above described method, Pruitt and his fellow workmen hoisted the rails and with their picks removed the decayed tie, cleansed the trench of whatever obstacles were left by its removal, and then removed the sound tie to the side of the track nearest to the creek, and two of them taking their places near the edge of the declivity, with the assistance of the others, inserted one end of the tie under the nearest rail and began to shove it through the trench. Another stuck his pick into it and began to pull, and when the end of it came under the outer rail, Pruitt stuck his pick into it and began to guide it through the trench, and to assist in drawing it to its place. The tie was about 13½ feet in length and had been made square by sawing, and weighed about four hundred pounds. The tie was put into its place by a succession of shoves made by the united efforts of the men who were pushing it, while at the same time Pruitt and the other workmen pulled upon it by the handles of their picks. When the end of the tie reached the second rail, Pruitt removed his pick from it, and when it appeared from under the second

rail, and between the second and third rails, he again stuck his pick into it and continued to pull, while the other man continued to pull with his pick and the other two continued to shove it forward as described. When the forward end of the tie approached the third rail, Pruitt deposes, that he was standing astride the trench, with his face toward the men who were shoving upon the tie, and whose faces were turned to him and with his face to the back of the other laborer who was pulling with a pick, and when the end of it approached near to the third rail, the men gave it a strong shove and the pick which Pruitt held, for some reason, released its hold from the tie, whereby he claims to have been caused to lose his balance, or to be turned to one side and his foot dropped into the trench in front of the end of the tie and between it and the third rail and resulted in the end of the tie coming with such force against his leg that it was broken at a point three or four inches above the ankle, and resulted finally in his being compelled to have the leg amputated a few inches below the knee. Other witnesses gave testimony to the effect that Pruitt, at the time of his injury, was standing with his right foot upon the rail toward which the end of the tie was approaching, and apparently lost his balance and his body was inclined forward and his foot slipped from the rail into the trench where it came into contact with the end of the tie which was then being shoved forward.

It does not appear that the foreman gave any particular directions to the men as to the method which they should adopt, or the manner in which they should remove the old tie and replace it with a new one. The foreman was immediately present when the work began, but before it was finished, he had turned away and went about other duties and was probably at a distance of forty or fifty feet when the accident to Pruitt occurred.

The plaintiff alleged that he was, at the time of his injury, engaged in interstate commerce, because of the fact of being engaged then in repairing a switch track which was used in interstate commerce and for such reasons was entitled to rely upon the provisions of the Federal Employers' Liability Act, and this seems to be conceded by the railway company.

After all the evidence had been heard for both plaintiff and defendant, the court sustained a motion for a

directed verdict in favor of the railway company, and adjudged that the petition be dismissed, and from this judgment Pruitt has appealed.

The appellant insists that the judgment of the court in directing a verdict against him was erroneous in that the evidence conduced to prove four distinct elements of negligence, which were the proximate causes of his injuries. The particulars wherein it is insisted that the railway company was negligent, are:

(1) The appellant was an inexperienced servant and known to be such by the railway company, and it negligently failed to instruct him as to how to do the work required and to warn him of the dangers incident to it.

(2) The foreman of the railway company failed to supervise the work and to direct the manner of its performance.

(3) The railway company negligently failed to provide the appellant with a safe tool with which to work, in that it provided him with a dull pick, and that its dullness caused it to release its hold upon the tie and thereby caused him to lose his balance, and to thrust his foot into the trench, where the end of the tie came in contact with it.

(4) The fellow workmen of appellant were negligent in that they shoved forward the tie without a signal from the foreman to do so, and causing him to thrust his foot into the trench, where it was struck by the end of the tie and thrust against the rail, thereby breaking his leg.

It is insisted that the foregoing asserted acts of negligence, singly and concurring, were the proximate cause of the injury.

The railway company denied all actionable negligence upon its part, and averred that the injury was caused solely by the negligence of appellant, and that he was contributorily negligent, and, also, relied upon the defense of the assumption of the risk by the appellant.

It may be conceded, that, under the Federal Employers' Liability Act, where an injury suffered by an employee, engaged in interstate commerce, is attributable to the negligence of the employer, the defense of the contributory negligence of the employee, is not available to the employer, except to diminish the damages, in any case; and, where the injury has been occasioned, in whole or in part, by the failure of the employer to comply with

the requirements of an act of congress for the promotion of the safety of employees, it is not available for a diminution of the damages; but, under the provisions of the same statute, the defense of assumption of risk is available to the employer, except where the employer has violated a federal statute enacted for the safety of the employee. In this action the injury was not occasioned by any violation of a statute having for its purpose the promotion of the safety of employees, and hence the defense of the contributory negligence of the employee is not available, as a complete defense to the causes of action, but the defense of assumption of risk may be relied upon as a complete defense. The defense based upon the averments that the injury was caused solely by the negligence of the appellant, is but an assertion in another form of the common law principle, that a master is not liable for an injury to his servant, unless the negligence of the master was a proximate cause of the injury, and this doctrine holds good under the Federal Employers' Liability Act, and hence if the injury complained of by the appellant was not caused, in whole or in part, by the negligence of the railway company, or of some one in its service, it cannot be held liable. Hence if the evidence heard upon the trial tends to or conduces to prove, any act of negligence relied upon by appellant in his petition as amended, and which was the proximate cause of appellant's injury, the court was in error in taking the cause from the jury. The contentions of appellant that the evidence conduced to prove a cause of action upon his part against the railway company, will be considered in their order.

(a) A presumption, that is founded upon common sense and common experience, is, that an individual employed to do a work will see, understand and appreciate any dangers incident to the work, which an ordinarily prudent and intelligent person of the same age and experience would see, understand and appreciate. The reason of the law for requiring the master to instruct his servant touching his duties, the nature of the work to which he is assigned, and to warn him of dangers attendant upon its execution, is to give to the servant the information which the master has, or ought to have, and which it is presumed that the servant does not have.

If the servant, in fact, has all the information, which the master could give him, to instruct and warn him

would be useless, and in such a state of case a failure to instruct and warn could not be a proximate or other cause of an injury. If one employs another to execute work which is dangerous, or the place of work is dangerous, and the master knows, or ought to know, that the servant on account of youth, inexperience or want of capacity, does not appreciate the dangers, it becomes the duty of the employer to instruct the servant as to the dangers and to warn him of them, but where neither the work nor the place where the work is to be performed is dangerous; where there are no hidden dangers and everything about it is such that an ordinarily intelligent person will readily see and understand all the dangers incident to it, and to perform it there is no particular skill necessary and nothing required but ordinary intelligence and physical strength sufficient to do it, there is no duty imposed upon the master to give instructions about the work nor warnings touching it. Jones v. L. & N. R. R. Co., 95 Ky. 476; Thompson on Negligence, vol. 4, section 4074; 18 R. C. L. 569, 560, 565 and 566. The evidence for appellant conclusively proved that he knew as much about how to do the work in which he was injured as the foreman or any one could have told him; that he at least had seen the work frequently done in his presence, and that it was of such character that merely having seen it, at least frequently, done, would give all the information which any one could impart to him as to manner and method of doing it; it was simple, such as any person with ordinary intelligence could readily understand and perform, if provided with the necessary physical strength; it was not dangerous, nor was appellant put in a dangerous place to work; the dangers incident to the work were only the ordinary hazards which may occur in the performance of any kind of labor and such as any one, who undertakes it, will assume. Bollington v. Louisville, etc., 125 Ky. 186; Wilson v. Chess-Wymond Company, 25 K. L. R. 665. Hence there was no negligence because of the failure of the foreman to give appellant instructions or warnings touching the work.

(b) The contention that the foreman was guilty of negligence in failing to stand immediately by all the time that the old tie was being taken out and the new one being placed in its stead, and directing each action taken by the men, and that such negligence was the cause,

either alone, or concurring with another negligent act, in causing appellant's injury, is not meritorious. It was a perfectly simple operation and susceptible of performance, by any person having ordinary intelligence and a sufficiency of physical strength to do it; free from intricacies; and not dangerous. A similar operation had been performed frequently, at least by three of the men participating, and appellant had frequently seen it done, and each of them, including appellant, fully understood the method, according to which such work was done, and the part which each was expected to play in doing the work. In fact knew as much about how it was done, the difficulties of it, and the remote dangers incident to it, as the foreman or any one else would have been able to have told them. It does not appear that there was but one usual and customary way of performing the operation, and such way was pursued by them. It appears, that oftentimes two men do such work and on this occasion, other men were nearby engaged at the time in similar operations. To require a foreman to stand immediately by and to give directions as to each action of the men, in so simple an operation and so well understood by the men performing it, and where the number engaged is so small, would carry the doctrine of necessity of supervision and direction to an absurd length. If the foreman had remained immediately by and directed each movement, it would have been to direct them to do, the very things they did. The foreman was about his duties conveniently near to have given any directions which were necessary. It was not usual nor customary for a foreman to act, as it is insisted that he should, in the performance of such work. It is insisted that if, the foreman had stood by and directed each movement, that the men would have worked in unison, and thus prevented the injury to appellant. This contention is based upon the inference, that they did not act in concert and in unison, and that such fact was the cause of the injury, but, the evidence does not justify such inference. The tie was pushed forward in the trench by successive, distinct shoves, as the evidence discloses, but, the men acted in concert, the ones at the one end pushing and the others pulling with their picks, immediately near to and in full view of each other, and co-operating with each other. Each was in a position to be apprised of each intended action by the other. The same rule of obligation

of the employer as to supervision and direction does not obtain, where the work is simple, thoroughly understood, and in which so few in numbers engage, as obtains, where the work is full of complications, and complexities, and the safety of an employee depends upon the actions of others, whose movements he is not aware of and cannot know.

(c) If the pick with which appellant was provided was dull and by reason thereof, its hold upon the tie was released, and appellant caused to lose his balance, and thereby resulting in his foot being thrust into the trench, it does not prove negligence upon the part of the railway company. No duty rests upon an employer to inspect and keep in repair so simple a tool as a pick, which has been furnished an employee, with which to work. It does not appear that the pick was not in reasonably fair condition for its uses, when provided. No special skill or knowledge is necessary to determine whether a pick is sharp or dull, and appellant had opportunity for inspection of it and was as well qualified as any one to determine whether there was any probable danger incident to its use, and the probable risks from its use. A simple tool such as a hoe, hammer, chisel, punch, pick and such like, when used, constitutes an exception to the general rule that an employer is obligated to inspect, test and keep in repair the tools and appliances provided for employees, with which to do their work. Stirling Coal & Coke Co. v. Fork, 141 Ky. 41; Ohio Valley Railway Company v. Copley, 159 Ky. 38; Duncan v. Gernert, 27 K. L. R. 1039; Flaig v. The Andrews Steel Company, 141 Ky. 397. Aside from what is said above, however, the evidence does not even tend to prove that the pick in use by appellant was dull, or, in any way, not reasonably sufficient for the work in which he was injured. No one testifies upon the subject except appellant, and the extent of his testimony is, that his opinion is that it was dull because it pulled out of the tie. And this fact is not sufficient proof that it was dull, or any way defective. He does not say that he examined it, or even that it was stuck into the tie with difficulty.

(d) Touching the contention, that the railway company is chargeable with negligence, because, the fellow workmen of appellant, who were pushing at one end of the tie, gave it a shove without any warning to him of their intention to do so and without a signal from the

foreman, is not upon the evidence sufficient to prove any negligence which could have caused the injury. The foreman was not giving signals, and appellant was not relying upon any such signal since the tie had made its entire progress, up to the time of his injury without any signal by the foreman, by distinct, successive shoves of it, by the men at its end, and each of these shoves was made with the assistance and co-operation of appellant, who, according to his statement, was standing astride the trench, pick in hand, with his face toward the other men, within ten or at most, twelve feet of them, watching for the shove and ready to co-operate with and assist by pulling with the pick. He does not testify that the shove, which was made, at the time, he received the injury, was without his knowledge or unexpected by him. The successive shoves doubtless arose, from the fact, that the men would push the tie, at one time, toward the place desired, as far as their strength would permit. and then taking another position would exert themselves in another shove. If the ones pushing, should have unexpectedly, and without warning to appellant, given the tie such a shove forward, as to cause him to fall into the trench and receive the injury, there would be some merit in the contention that their acts were negligent as to appellant, but, the evidence does not conduce to support such a state of facts. Appellant was pulling, as the other men were pushing. They were co-operating to move the tie forward to the place desired. The men, who were pushing, were doing the duty assigned them, and in the usual and customary way, and the thing, which appellant knew they were attempting to do, along with himself and their acts could not be negligent toward appellant, unless done without ordinary care for his safety, or in some unusual and unexpected way, which had the effect of taking him off his guard in a way to prevent his protecting himself and thus resulting in his injury. They could not anticipate that appellant would unfortunately step into the trench. He was aware of all their movements. As heretofore stated when the end of the tie came from under the first rail, he stuck his pick in it, and pulled, until it approached the second rail, when he removed it, and when it passed under the second rail, he stuck his pick into it again, and does not appear to have desisted in pulling at it, at any time.

Appellant fails to make it exactly clear how it was, that his foot was thrust into the trench, but the only reasonable conclusion from the evidence in his behalf, is, that he was pulling upon the pick handle, with such force, that it was caused to be loosened from the tie, and this caused him to partially lose his balance and in some way unexplained thrust his foot into the trench, but, the evidence does not tend to prove any actionable negligence upon the part of the railway company, or its employees, which caused the unfortunate accident, which happened to him, and which appears to have been the result of one of the common hazards, which attend any kind of heavy labor, and which one engaging in it, assumes, and the judgment is therefore affirmed.

Judgment affirmed.