# Chesapeake & Ohio Railway Company v. Howard's Administratrix.

(Decided June 24, 1932.)

BROWNING & DAVIS for appellant.

WOODS, STEWART, NICKELL & SMOOT for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Alliean Howard, as administratrix of E. C. Howard, brought this suit under the Federal Employers' Liability Act (45 USCA, secs. 51-59) against the Chesapeake & Ohio Railway Company to recover damages for his death. From a verdict and judgment in her favor for $8,500, this appeal is prosecuted.

The facts are these: Near the eastern end of the city of Ashland the railway company maintains a yard which is used for the switching, storage, and repair of cars. The east-bound track is on the southern side of the yard, while the west-bound track is on the northern side of the yard. The two tracks are main-line tracks, and are used by through trains. Between the two tracks is the lead track, and branching off from the lead track are numerous switch tracks. At the time of the accident two yard crews of five men each, in addition to other employees, were working in the yard. In the course of a day they numbered about one hundred and fifty. Howard was a switchman or brakeman in one of the yard crews. The yard engine was engaged in moving a cut of cars from one switch track to another. To do this it was necessary to move the cars eastward along the lead track until

the switch for track No. 17 was cleared. In carrying out this movement the engine coupled to the cut of cars and proceeded along the lead track at the rate of about six miles an hour. Behind it, and proceeding in the same direction along the east-bound main, was a through freight train going at the rate of fifteen to twenty-five miles an hour. The two tracks, the east-bound main and the lead track, gradually converge until at a point opposite No. 17 switch the distance between them is only 5 or 6 feet. As the yard engine moved along, Howard was on the running board on the side next to the east-bound main. When the yard engine reached the point on the lead track opposite No. 17 switch, Howard stepped from the running board on the side next to the east-bound main. According to the witnesses for appellee he was struck and killed as he stood or was moving on the east-bound main with his back to the approaching freight train, and was making some kind of a motion with his hand. They further testified that when Howard first stepped on the east-bound main the engine of the freight train was from 50 to 172 feet away, and that no warning of its approach was given by bell or whistle. On the other hand, the engineer of the yard engine testified that he saw Howard standing on the footboard until the engine reached No. 17 switch. At that time the engine of the east-bound freight was right along the side of the yard engine. He then turned his head toward the engine of the freight train, and did not see Howard again. Assuming that Howard stepped from the yard engine, the engine of the east-bound freight was then within 2, 3, or 4 feet of him. According to the fireman of the yard crew, he could not see Howard on the front end of the engine, but the engine of the east-bound freight caught up with the yard engine at No. 17 switch. The fireman on the east-bound freight testified that as both engines approached the switch he saw Howard on the yard engine, but that he passed out of his view when the freight engine came within two or three car lengths of the yard engine. The engineer of the east-bound freight stated that he did not see Howard until after he had been run over, and that his engine caught up with and passed the yard engine at No. 17 switch. The evidence of John Castle, head brakeman, was to the same effect. There was further evidence of an actual test that Howard could not have been seen by the engineer of the east-bound freight if the engine was within 140 feet of him, and that

Howard passed out of the view of the fireman on the east-bound freight when the freight engine came within 160 feet of the yard engine. There was also evidence that the bell on the east-bound freight engine was ringing as it approached the place of accident.

All other alleged errors are expressly waived, and the sole ground on which a reversal is asked is that the trial court should have directed a verdict in favor of appellant.

As the action is under the Federal Employers' Liability Act, the decisions of the United States Supreme Court are controlling. Louisville & N. R. Co. v. Grant, 234 Ky. 276, 27 S. W. (2d) 980.

Appellant relies upon Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758, and Toledo, St. L. & W. R. Co. v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. Ed. 513, holding in the former that a track repairer, and in the latter that a car checker, both of whom were employed in the railway yards, assumed the risk of injury from the movement of a yard engine, or of cars in the yard. While the doctrine of these cases, though seriously questioned, has been adhered to, it has been limited to yard movements, and has been held not to apply to the movement of a train that had just come in and was backing into the yard on the main track without a lookout on the end of the train and any warning of its approach. Seaboard Air Line Ry. v. Koennecke, 239 U. S. 353, 36 S. Ct. 126, 60 L. Ed. 324. No reasonable distinction can be drawn between that case and the case at bar. The east-bound main ran through the yards and immediately adjoined the lead track and the numerous switch tracks. The yard was used by such a large number of employees that their presence on the main line tracks in the performance of their duties was naturally to be anticipated, thus disclosing a situation where ordinary care on the part of those in charge of the engine required the keeping of a lookout and timely warning of the train's approach. The evidence on this point being conflicting, the question was for the jury, and it cannot be said that Howard's negligence was the sole cause of his injury. Nor can it be said that he assumed the risk. It was not one of the ordinary risks of his employment, but an extraordinary risk fairly attributable to the negligent operation of the train, and therefore one which Howard did not assume unless the consequent danger was so obvious that an ordinarily prudent person in his

situation would have observed and appreciated it. Chesapeake & Ohio R. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016, a situation which we cannot declare to have existed as a matter of law.

Judgment affirmed.