## Louisville & N. R. Co. v. Noble's Adm'x et al.

(Decided Nov. 22, 1932.)

ASHBY M. WARREN, J. P. HAMILTON, and H. T. LIVELY, C. S. LANDRUM, and CRAFT & STANFILL for appellant.

C. A. NOBLE, J. T. BOWLING, ELBERT STRONG, and WOOTTON, HELM & WOOTON for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Reversing.

On November 17, 1927, Farish Noble, a young brakeman employed by the appellant, was killed in a collision. His administratrix recovered a judgment against the company for $10,000 which, on appeal, was reversed because the suit had been practiced under section 6 of the Kentucky Statutes instead of under the Federal Employers' Liability Act (45 USCA secs. 51-59), it appearing that the deceased was engaged in interstate commerce. Directions were given to permit a withdrawal by the plaintiff of an election to prosecute the case under the state statute and an amendment of the pleadings to conform to the federal act. All other questions were reserved. L. & N. v. Noble's Adm'x, 234 Ky. 504, 28 S. W. (2d) 733. Upon a retrial, judgment for $8,000 was rendered, from which this appeal is prosecuted.

It seems well to restate the facts in part for a better consideration of the particular point upon which this appeal must be decided, namely, that of a directed verdict.

The deceased was working on a train of forty-one loaded coal cars. When it reached the junction with the main line at Typo, in Perry county, instructions

were given by the dispatcher that the train should proceed a few miles south to the Crawford yards and that the cars having steel under-frames should be placed on track No. 1, and those with wooden under-frames on track No. 3. These instructions were conveyed by Jennings, a brakeman, to the engineer, a fireman, and the deceased brakeman, Noble. Between the two main tracks in the yard are five storage tracks numbered 1 to 5, beginning with the one nearest the south-bound main track upon which this train ran. A cross-over or lead track diverges from it northwardly to the storage tracks, each in the order named.

When the train reached the yards near the office, as was the prevailing custom, the conductor or flagman cut loose the caboose while the train was in motion. The conductor remained in the caboose and the flagman went back to protect it. The engine and coal cars went on. There was an understanding by the engineer and the two brakemen that he should pull his train beyond the switch of the lead track and remain standing for a few minutes until the switches could be set and then back into the lead track and track No. 1. This was about 4:45 a. m., and the morning was dark, cold, and rainy. The fireman says that Noble got off the engine while it was in motion at a point about even with the switch from the lead track to siding No. 1, and that Jennings left the engine a moment later, about even with the switch from the main to the lead track. These switches are about 150 feet apart. Jennings testified that they got off about the same time, and, after getting on the ground, he told Noble to line the switches and he would go ahead and pick out the wooden under-frame cars. This was agreed to. There were only two cars of this type and they were the eleventh and twelfth from the engine. This left a string of twenty-eight cars on the rear end of the train to be placed on track No. 1. Jennings walked toward the engine and, it would seem, it began backing before he reached the coupling between the two classes of cars. At any rate, he boarded the train at that place and rode back on it in order to uncouple the cars at the proper place on track No. 1. It was understood then that the engine would go forward to permit the throwing of the switches and the placing of the two wooden cars on track No. 3, and then again pull out and back

the rest of the string on No. 1 track. It was further understood that Jennings would ride the train and do the uncoupling while Noble tended the switches.

The switch to the lead track was opened by Noble, for there was no one else who could have opened it except Jennings, and he testified that he did not do so. After a few moments the engine sounded the whistle and backed at the rate of four or five miles an hour. The switch from the lead into track No. 1, had not been opened (which fact was unknown to the engine crew and Jennings), so that the cut of cars passed on and went into track No. 4. The engine men and Jennings thought it was going into track No. 1. There was a violent collision with some cars standing on track No. 4. Noble's body was found on the drawbar of the first of the cars which had been backed in. From his position it would seem that, when the cars collided, he was trying to get to the air cut-off valve which, if opened, would have stopped the train.

The law applicable to this case is the federal statute, and the interpretations thereof given by the Supreme Court of the United States, which are to be regarded as an integral part of it. L. & N. v. Jolly's Adm'r, 232 Ky. 702, 23 S. W. (2d) 564; C. & O. Railway v. Howard's Adm'x, 244 Ky. 838, 51 S. W. (2d) 461.

The uncontradicted, positive, and clear evidence of Jennings proves that the unfortunate man failed to perform the duty resting upon him to open the switch into track No. 1. It is also conclusively shown that he had no duty to perform on the moving cars and there was no reason for his being in that place of peril. His place was on the ground and not on the train. If the deductions of appellees' counsel be sound, that he was there to protect the train, he failed to do so, thereby becoming the author of his own tragic death. It is shown he could have stopped the moving cars by opening the air brake angle cock. The fireman did testify that the point where Jennings got off the engine was closer to the switch at track No. 1 than the point where Noble got off, and he expresses the opinion that it became the duty of Jennings to throw that switch while Noble should throw the lead track switch. Aside from the weak character of the evidence and its speculative nature, it was impossible for the witness to know of

the definite arrangement made by the two brakemen as related by Jennings, who is not impeached. It would seem sufficient to quote these pertinent extracts from the recent case of Atchison, Topeka & Santa Fe Railway Company v. Saxon, 284 U. S. 458, 52 S. Ct. 229, 230, 76 L. Ed. 397:

"Nobody saw the accident; no one can say with fair certainty how it occurred. Consistently with the facts disclosed, it might have happened in one of several ways and without causal negligence by the petitioner (Railroad Company). * * * What occasioned this distressing accident can only be surmised. It was necessary to show causal negligence in order to establish the respondent's right to recover. The evidence fails to meet this requirement."

Applying the law to those facts, it is said:

"As often pointed out, one who claims under the Federal Act must in some adequate way establish negligence and causal connection between this and the injury. N. Y. Central Railroad Co. v. Ambrose, 280 U. S. 486, 50 S. Ct. 198, 74 L. Ed. 562; Atchison, T. & S. F. Ry. v. Toops, 281 U. S. 354, 50 S. Ct. 281, 74 L. Ed. 896."

See, also, Ellis' Adm'r v. L. H. & St. L. Ry., 155 Ky. 745, 160 S. W. 512; Sutton's Adm'r v. L. & N., 168 Ky. 81, 181 S. W. 938; Meyers v. C. & O. Ry. Co., 202 Ky. 443, 259 S. W. 1027; and Caudill v. L. & N. Railroad Company, 235 Ky. 687, 32 S. W. (2d) 23.

It was pleaded and is argued that, under the rules of the company introduced in evidence, it was the duty of the conductor to supervise these switching movements and to see that the switches were properly set; that he should not have remained in the caboose; that he was delayed there because he had to stop and clean his lantern, whereas the lantern should have been in shape for immediate use. It is doubtful if the claimed duty devolved upon the conductor. L. & N. Railroad Company v. Winkler, 162 Ky. 843, 173 S. W. 151; Pruitt v. N. & W. Ry. Co., 188 Ky. 204, 221 S. W. 552. But let it be assumed that the admission of the rules was proper and that those rules were applicable to switching movements and placed such duty upon the conduc-

tor; nevertheless, the brakeman had as much knowledge of the situation as the conductor could have had and was charged with some if not the entire responsibility.

In another recent case, Baltimore & Ohio Railroad Company v. Berry, 286 U. S. 272, 52 S. Ct. 510, 76 L. Ed. 1098, a somewhat similar question was presented. A caboose stopped on a trestle unknown to either the conductor or the brakeman. The conductor ordered the brakeman to alight and he was injured when he did so. It was held that, where there was equal opportunity for knowledge, it precluded the inference that the brakeman relied or had reason to rely on the conductor to warn him of his danger and that the conductor was under no duty to ascertain by inspection whether the brakeman could alight safely, since he was obligated to use reasonable care to ascertain whether, in doing his work, he was exposing himself to peril. It was further held that if negligence caused the injury it was exclusively that of the brakeman, and that proof of negligence by the railroad company was prerequisite to a recovery under the Federal Employers' Liability Act.

Of relevancy also is Unadilla Valley Railroad Company v. Caldine, 278 U. S. 139, 49 S. Ct. 91, 73 L. Ed. 224, in which a conductor gave the wrong signal to the engineer which resulted in the conductor's death. It was held that notwithstanding it was the duty of the engineer to disobey the signal, and notwithstanding negligence on the part of a station agent to give a certain message to the conductor, his estate could not recover. Mr. Justice Holmes, for the court, said:

"A failure to stop a man from doing what he knows that he ought not to do, hardly can be called a cause of his act. Caldine had a plain duty and he knew it. The message would only have given him another motive for obeying the rule that he was bound to obey."

See annotation of the Caldine Case in 73 L. Ed. 224 under the title, "Violation by injured employee of rule or order as affecting right to recover under Federal Employers' Liability Act."

We cannot see that the failure of the conductor to personally supervise the deceased's actions or the switching of the cars under the circumstances constituted any negligence on the part of the master.

In response to the claim that the company was negligent because the train was backing without a specific signal to do so before the switches had been properly set, and because of its length and position on a curve it was impossible with the number of men on the train to give such signal, it must be said (regarding the pleading to be sufficient) that the deceased assumed this risk, which was an ordinary one. The evidence is that the train was properly manned and the usual signal of a purpose to back up was given by the engineer sounding his whistle. It is not claimed there was any violation of the federal statutes with respect to these or any other matters involved in the suit. Hence the defense of assumed risk is available. This doctrine of assumed risk of these ordinary hazards has been well established in a series of controlling decisions of the Supreme Court, followed by a like group of the opinions of this court. Ordinary risks are those dangers and risks that are normally or necessarily incident to one's occupation, and the hazards to which Noble was subjected in the switching of the cars in the manner agreed upon by his associates and himself are to be so classed.

We may note especially Boldt v. Pennsylvania Railroad, 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385, in which a railroad yard conductor was fatally injured by a collision of a moving string of cars with others standing on a track, the movement being made in the customary way. Also L. & N. v. Strange's Adm'x, 156 Ky. 439, 161 S. W. 239, in which it was held that a brakeman assumed the risks and hazards arising from jerks of the train which are usually and ordinarily incident to its prudent operation. Of like effect is C. & O. v. Walker's Adm'r, 159 Ky. 237, 167 S. W. 128. See also on the subject of assumed risk Matthews' Adm'r v. L. & N., 130 Ky. 551, 113 S. W. 459; Burch v. Louisville Car Wheel & Ry. Supply Company, 146 Ky. 272, 142 S. W. 414; Truesdell v. C. & O. Ry. Co., 159 Ky. 718, 169 S. W. 471; L., H. & St. L. Ry. Co. v. Wright, 170 Ky. 230, 185 S. W. 861; Pruitt v. N. & W. Ry. Co., supra.

We are of the opinion that the plaintiff failed to make out a case. Therefore, that a peremptory instruction for the defendant should have been given.

It is not necessary to discuss other questions raised in brief.

Accordingly, the judgment is reversed.